# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. _____

LISA MILES A.K.A ELISA MARIE MILES; and those similarly situated

      Plaintiffs,

v.

BKP INC.;
ELLA BLISS BEAUTY BAR LLC;
ELLA BLISS BEAUTY BAR - 2, LLC;
ELLA BLISS BEAUTY BAR - 3, LLC;
BROOKE VANHAVERMAAT;
KELLY HUELSING; AND
PETER KOCLANES

      Defendants.

---

## CLASS AND COLLECTIVE ACTION COMPLAINT

---

## INTRODUCTION

1.      The business operation of Ella Bliss Beauty Bar is founded on the exploitation of its workers.

2.      Customers pay almost $80 for a manicure and a pedicure, yet out of that almost $80, Plaintiff Lisa Miles, like other nail technicians, would receive only $.85 cents in commission. When Ella Bliss had offered Ms. Miles the job, it had promised to pay her $3.90 in commission for a manicure and pedicure service.

3.      Ella Bliss also did not pay Lisa Miles or any of the other Service Technicians at any of its three stores *any amount whatsoever* for the hours that they spent cleaning and performing other mandatory chores. In fact, Ella Bliss did not employ janitors or a cleaning

service and relied exclusively on the unpaid labor of its nail technicians and other Service Technicians to clean the salon.

4.      Ella Bliss's policies and practices governing compensation, including its failure to pay Plaintiff and its other Service Technicians promised commissions, its failure to pay them for the time that they spent cleaning and doing other chores, and its failure to pay overtime, are illegal and constitute, among other things, violations of the Fair Labor Standards Act and the Colorado Wage Claim Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under state law.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in Colorado or are registered to do business in Colorado.

## PARTIES

7.      At all times material to the allegations of the complaint, Plaintiff was a resident of and domiciled in the District of Colorado.

8.      Plaintiff signed a written consent to be a named Plaintiff in a Fair Labor Standards Act collective action and the signed consent is attached to this Complaint as Exhibit 1.

9.      At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR LLC (hereinafter "Ella Bliss 1") was a Colorado limited liability company with its principal place of business in the District of Colorado.

10.     At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR - 2, LLC (hereinafter "Ella Bliss 2") was a Colorado limited liability company with its principal place of business in the District of Colorado.

11.     At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR - 3, LLC (hereinafter "Ella Bliss 3") was a Colorado limited liability company with its principal place of business in the District of Colorado.

12.     At all times material to the allegations of the complaint, Defendant BKP INC. (hereinafter "BKP") was a Colorado corporation with its principal place of business in the District of Colorado.

13.     Ella Bliss 1, Ella Bliss 2, Ella Bliss 3, and BKP shall hereinafter be referred to as the "Entity Defendants."

14.     At all times material to the allegations of the complaint, Defendant Vanhavermaat was a natural person residing and domiciled in the District of Colorado.

15.     At all times material to the allegations of the complaint, Defendant Koclanes was a natural person residing and domiciled in the District of Colorado.

16.     At all times material to the allegations of the complaint, Defendant Koclanes was a natural person residing and domiciled in the District of Colorado.

## STATEMENT OF FACTS

### I.     Ella Bliss

17.     Brooke Vanhavermaat, her sister, Kelly Huelsing, and their father, Peter Koclanes formed BKP in 2013. Defendant Vanhavermaat is the President of BKP, and Defendant Huelsing is the Vice President.

18.     BKP is the parent company of Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3. Ella Bliss 1 is located in Greenwood Village, Colorado; Ella Bliss 2 is in Denver, Colorado; and Ella Bliss 3 is in Highlands Ranch, Colorado.

19.     Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3 (collectively "Ella Bliss") provide services like those typically offered at a day spa or salon, including massages, manicures and pedicures, blowouts, facials, waxing, eyelash extensions, and makeup consultations and application.

20.     Customers at Ella Bliss pay a set price for each service they purchase. For example, Ella Bliss charges $78 for a manicure/pedicure combination. However, customers can pay a monthly membership fee and receive membership benefits that include a discounted rate on services.

21.     Ella Bliss employs various "Service Technicians" to perform the services that it offers. Service Technicians include nail technicians, cosmetologists, estheticians, and massage therapists.

22.     There are approximately twenty-five (25) to thirty-five (35) Service Technicians employed by each Ella Bliss location at any given time.

23.     All Service Technicians employed by Ella Bliss were subject to the same employment policies.

II.     **Plaintiff's Employment by Defendants**

24.     Defendants hired Plaintiff, Lisa Miles, to work as a nail technician in March 2016.

25.     Plaintiff worked primarily at Ella Bliss 2 in Denver, but she also worked intermittently at Ella Bliss 1 in Greenwood Village for most of her employment.

26.     Plaintiff and Ella Bliss entered into a contract in which Ella Bliss agreed that it would pay Plaintiff $17 per hour, plus 5% commissions on services. In approximately fall 2016, Plaintiff received a raise to $18 per hour.

27.     Also in fall 2016, Plaintiff began working as a "lead" nail technician. Leads were responsible for training the other Service Technicians and "setting a good example."

28.     Plaintiff worked as a lead nail technician until approximately July 2017, when she stepped down from her position as lead.

29.     During her employment, Plaintiff consistently complained about Ella Bliss's pay practices. Plaintiff also complained about other practices at Ella Bliss, including that employees made comments that were inappropriate and that Ella Bliss retained nail technicians who were not competent at their job.

30.     In September 2017, Ella Bliss terminated Plaintiff's employment. Defendant Koclanes informed Plaintiff of her termination. When Plaintiff asked him why Ella Bliss was firing her, he refused to provide a reason.

**III.     Defendants Jointly Employed Plaintiff and Those Similarly Situated**

31.     The individual Defendants, Defendants Vanhavermaat, Koclanes, and Huelsing, were each very involved in setting policies for Ella Bliss and managing and supervising the day-to-day operations at all Ella Bliss locations.

32.     Defendant Vanhavermaat, either individually or in consultation with Defendants Koclanes and Huelsing, set all policies, rules, and standards for Ella Bliss Service Technicians. Defendants Vanhavermaat, Koclanes, and Huelsing, as well as the store managers, implemented these policies, rules, and standards.

33.     In addition to setting the rules for Service Technicians, Defendants Vanhavermaat, Koclanes, and Huelsing controlled Service Technicians' conditions of employment by personally supervising their work. The individual Defendants were often present at each of the three stores, and usually each Defendant came by each store at least once a week to supervise.

34.     Defendants Vanhavermaat, Koclanes, and Huelsing also ran quarterly, mandatory meetings for all Ella Bliss employees, including Service Technicians. Defendant Vanhavermaat led the meetings the majority of the time, but Defendants Koclanes and Huelsing also spoke at the meetings. During the meetings, Defendants Vanhavermaat, Koclanes, and. Huelsing communicated to the employees company rules and policies, including those governing Service Technicians' work and compensation.

35.     Furthermore, Defendants Vanhavermaat, Koclanes, and Huelsing made decisions regarding the hiring and firing of the Service Technicians.

36.     Along with the individual Defendants, the entity Defendants—BKP, Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3—jointly employed Plaintiff and those similarly situated.

37.     The Entity Defendants jointly exercised substantial control over the terms and conditions of the work of Plaintiff and other Service Technicians.

38.     The Entity Defendants co-determined the policies, procedures, and rules, including those relating to compensation, benefits, and hours, governing all Service Technicians at all three Ella Bliss stores.

39.     Through the individual Defendants, who controlled the Entity Defendants, the Entity Defendants jointly had the ability to fire and hire Service Technicians and decide when and at what store a Service Technician would work.

40.     While most of Plaintiff's paychecks were issued by Ella Bliss 2, BKP occasionally issued Plaintiff's paychecks.

## IV.     Ella Bliss's Illegal Pay Practices

41.     Policies were companywide at all Ella Bliss stores and applied to all Service Technicians.

42.     Ella Bliss made clear that its wage policies applied to all Service Technicians as follows.

43.     Ella Bliss provided each Service Technician a form offer letter—which, when accepted by the Service Technician, became a contract—and a "Customer Service Contract" setting forth Ella Bliss's policies. These policies provided, as discussed more fully below: one, Service Technicians had to arrive fifteen minutes prior to the start time of each scheduled shift; two, Ella Bliss did not pay its Service Technicians for downtime; and three, Ella Bliss would pay a percentage commission for each service the Technician performed.

44.     In addition to the contract, Ella Bliss communicated rules and polices that governed Service Technicians through its Handbook and via group emails to all Service Technicians. The Handbook and emails discussed, among other things, Ella Bliss's policy regarding downtime.

45.     Ella Bliss also held mandatory companywide meetings, at least quarterly, at which it discussed its policies, including those regarding downtime and commissions.

46.   Ella Bliss explicitly and willfully maintained policies that violate state and federal wage and hour laws in at least the following ways.

   **A.  Failure to Pay for Downtime**

47.   After the first 60 days of employment, Ella Bliss does not compensate its Service Technicians for downtime. Rather, Ella Bliss only pays for "service time," meaning the time when the Technicians are serving customers (e.g., when nail technicians are doing a manicure or pedicure).

48.   Ella Bliss's contract with Plaintiff states that Plaintiff would be paid $17/hour per "service hour" but she would not receive any downtime pay after the first 60 days of employment. The contract provided that Ella Bliss would pay Plaintiff $5.50 /hour for downtime for her first 60 days.

49.   Although Ella Bliss paid other Service Technicians and even other nail technicians a different hourly rate, the policies to which Plaintiff was subject applied to every Service Technician at all three locations.

50.   The policies provided that the only Service Technicians paid for downtime (after the first 60 days of employment) were assistant lead technicians and lead technicians. Ella Bliss's policy during Plaintiff's employment was to pay $5.50/hour to assistant lead technicians for downtime and $6.50/hour to lead technicians for downtime. However, the rate was negotiable; for instance, Plaintiff earned $7/hour for downtime when she worked as a lead technician.

51.   During downtime, Ella Bliss prohibited its Service Technicians from leaving the premises of the store if they had less than an hour between scheduled services.

52.     If a Service Technician had more than an hour between scheduled services, Ella Bliss sometimes allowed the Technicians to leave the premises, but only with explicit permission from the manager. If allowed to leave, Ella Bliss expected Service Technicians to be on-call and able to return within 15 minutes in order to serve walk-in customers who had not booked services in advance.

53.     Ella Bliss communicated through group emails to all Service Technicians its requirements that Service Technicians remain on the premises if they had less than an hour between scheduled services and remain on-call if they had more than one hour between scheduled services. The emails reminded the Technicians that leaving the premises during downtime was a "privilege" not a "right."

54.     During downtime, Ella Bliss expected its Service Technicians to perform tasks for the benefit of Ella Bliss, such as cleaning and folding towels. Indeed, Ella Bliss explicitly required Plaintiff to agree in her "Customer Service Contract" that she would "participate in downtime activities when not in service."

55.     Ella Bliss did not employ a janitorial service and instead relied on its Service Technicians to do all the cleaning. If the Service Technicians did not do a good enough job cleaning, their supervisors, including Defendants Vanhavermaat and Huelsing and especially Defendant Koclanes, would reprimand them.

56.     Ella Bliss also held companywide meetings at which managers, including Defendant Vanhavermaat, would tell the Service Technicians that they were not doing a good enough job cleaning on their downtime and that they needed to do better.

**B. Failure to Pay for Pre- and Post-Shift Work**

57.     Pursuant to Plaintiff's "Customer Service Contract," Ella Bliss required her to "arrive fifteen minutes prior to [the] start time of [her] scheduled shift." Ella Bliss also required Plaintiff to "participate in beginning/end of shift duties" and "check out with Concierge, Lead, or Management before leaving for the day."

58.     Ella Bliss required its Service Technicians to arrive 15 minutes early in order to prepare and set up for their first service.

59.     Ella Bliss also required its Service Technicians to stay after the end of their last service to do chores. It typically took the Service Technicians at least thirty minutes at the end of each shift to finish their chores.

60.      Service Technicians' chores included cleaning their service area and implements. Additionally, each type of Service Technician had technician specific chores. For example, nail technicians had to fold and put away towels, restock their stations, and clean pedicure bowls.

61.     Service Technicians also had to do general cleaning, like cleaning the bathroom and kitchen.

62.     Ella Bliss expected each Technician to do two to four chores each shift, including at least one technician specific chore and one general cleaning chore.

63.     Ella Bliss did not pay its Service Technicians for their pre- and post-shift work.

**C. Withholding Tips to Compel Work**

64.     Ella Bliss required the Service Technicians to check out with a manager before they could leave at the end of their shift.

65.     The managers kept the Service Technicians' cash tips in a lock box behind the front desk. In order for a Service Technician to collect her tips from the shift, Ella Bliss required her to check out with a manager.

66.     Ella Bliss ensured that the Service Technicians did their chores by withholding the Technicians' tips until they finished their chores. The managers withheld a Service Technician's tips until the manager verified that the Service Technician had completed her chores.

67.     If the Service Technician did not check out with a manager or did not do her chores, Ella Bliss kept her tips, sometimes for up to a week at a time, until she did her chores at the end of another shift.

**D.  Failure to Pay Commissions**

68.     In Plaintiff's contract with Ella Bliss, Ella Bliss agreed to pay her "5% commission on services."

69.     The plain language of the contract provision, and Plaintiff's understanding of the provision, meant that Ella Bliss would pay Plaintiff 5% of the service price for each service she performed.

70.     For example, the one-hour Signature Nail Service—a manicure and pedicure—cost the customer $78. Plaintiff thus should have received a $3.90 commission on such a service.

71.     Regular practice in the industry is to pay nail technicians and other similar service providers a commission calculated in this manner: based on the service rate—the cost to the customer—of the service performed.

72.     However, despite what was stated in Ella Bliss's Service Technicians' contracts and despite the industry standard, Ella Bliss paid its Service Technicians commissions based on their hourly rate. So, if Plaintiff worked for one hour to complete a Signature Nail Service, Ella Bliss paid her only $.85 in commission—5% of her hourly rate of $17—instead of the $3.90 to which she was entitled.

73.     Defendants' failure to pay commissions on the service rate applied to all Service Technicians. To ensure that there was no confusion, near when Plaintiff first started working for Ella Bliss, Defendant Vanhavermaat held a mandatory companywide meeting at which she reiterated that (contrary to its written contract) Ella Bliss paid commissions on each Service Technician's rate (their hourly pay), not the cost of the service to the customer.

## V.     The Illegal Pay Policies and Practices Caused Unpaid Overtime

74.     The off-the-clock time resulting from the illegal pay policies described above, including Ella Bliss's failure to pay for downtime and pre- and post-shift work, led to Plaintiff and other Service Technicians not being paid for all hours worked, which included unpaid overtime for hours worked in excess of 40 in a workweek.

75.     For example, if Plaintiff worked fifty hours a week including downtime and pre- and post-shift work, Ella Bliss paid her only for twenty to thirty-five hours: the amount of time when she was actually doing services.

76.     On average, Plaintiff worked twenty to thirty-five hours per week in service time, but she regularly worked more than forty hours a week including downtime and pre- and post-shift-work time.

77.     Thus, although Service Technicians including Plaintiff often worked over forty hours a week, because Ella Bliss paid them only for service time and not for downtime and pre- and post-shift work, Ella Bliss never paid them any overtime pay.

78.     Ella Bliss did not pay Plaintiff overtime pay in almost every workweek during her employment with Ella Bliss.

79.     For example, during the work week of Sunday, May 29, 2016, Ella Bliss compensated Plaintiff for approximately thirty hours. Because of the illegal pay policies, she was not compensated for at least 10 hours of straight time and at least 10 to 15 hours of overtime.

80.     As another example, during the work week of Sunday, June 5, 2016, Ella Bliss compensated Plaintiff for approximately thirty hours. Because of the illegal pay policies, she was not compensated for at least 10 hours of straight time and at least 10 to 15 hours of overtime.

## RULE 23 CLASS ALLEGATIONS

81.     Plaintiff alleges all claims, other than the FLSA claims, as a Fed R. Civ. P. 23 class action on her own behalf and on behalf of classes for which she seeks certification.

82.     Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the "Rule 23 Class" as follows:

> ALL CURRENT AND FORMER SERVICE TECHNICIANS
> WHO WORKED AT ANY OF ELLA BLISS BEAUTY BAR'S
> THREE LOCATIONS

83.      The class is so numerous that joinder of all potential class members is impracticable. Plaintiff does not know the exact size of the class since that information is within the control of Defendants. However, Plaintiff estimates that, based on the size of Ella Bliss's

operations, the class is composed of well over 80 persons. The exact size of the class will be easily ascertainable from Defendants' records.

84.     There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants' pay practices and Defendants' failure to pay employees all they are legally owed.

85.     The class claims asserted by Plaintiff are typical of the claims of all the potential class members because she experienced the same or similar working conditions and pay practices as Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage, hourly workers like the class members here, who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system pro se, and whose small claims make it difficult to retain legal representation if they do seek it.

86.     Plaintiff will fairly and adequately protect and represent the interests of the class. Plaintiff was Defendants' employee and was a victim of the same violations of law as the other class members, including numerous violations of federal and state wage and hour laws.

87.     Plaintiff is represented by counsel experienced in litigation on behalf of low-wage workers and in wage and hour class actions.

88.     The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

89.     Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent federal and state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

90.     Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action.

91.     Plaintiff is unaware of any pending litigation commenced by members of the class concerning the instant controversy.

92.     It is desirable to concentrate this litigation in this forum because all parties are domiciled in this jurisdiction or are registered to do business in this jurisdiction.

93.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

94.     The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain. *See* 29 C.F.R. § 516, *et seq.*

## 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

95.     Plaintiff brings her FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all other similarly situated current and former employees of Defendants.

96.     Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the "216(b) Class" as follows:

ALL CURRENT AND FORMER SERVICE TECHNICIANS
WHO WORKED AT ANY OF ELLA BLISS BEAUTY BAR'S
THREE LOCATIONS

97.　　All potential FLSA class members are similarly situated because, among other

things, they all worked as Service Technicians for Defendants. Moreover, all members of the

class suffered from the same policies of Defendants resulting in unpaid overtime in overtime

workweeks, including:

    a.　　Failure to account for "downtime" work in determining overtime
       compensation.

    b.　　Failure to account for pre- and post-shift work in determining overtime
       compensation.

### CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Unpaid Overtime Under The Fair Labor Standards Act**
**29 U.S.C. §§ 201, *et seq.***
**(Named Plaintiff and the 216(b) Class vs. All Defendants)**

98.　　Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set

forth herein.

99.　　Plaintiff brings her FLSA claim as a collective action, pursuant to 29 U.S.C.

§ 216(b), on behalf of herself and on behalf of all other similarly situated current and former

employees of Defendants.

100.　　All Defendants employed Plaintiff and those similarly situated pursuant to the

Fair Labor Standards Act.

101.　　Each Defendant is or was a member of an enterprise that had annual revenues in

excess of $500,000 during Plaintiff's employment and had two or more employees that handled

goods or materials that had been moved in or produced for interstate commerce. Defendants

16

were therefore part of an enterprise or enterprises engaged in commerce pursuant to 29 U.S.C. § 203(s)(1).

102.     As employers of Plaintiff and those similarly situated, Defendants named in this claim were required to pay Plaintiff and those similarly situated overtime pursuant to 29 U.S.C. § 207 and failed to do so.

103.     Defendants' failure to pay overtime was caused by their failure to include downtime and pre- and post-shift work as compensable time for the purposes of calculating FLSA overtime.

104.     Defendants' failure to pay their employees as required by the FLSA was willful pursuant to 29 U.S.C. § 255(a).

105.     Plaintiff and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216:

     i.     unpaid overtime;

     ii.     gap time for any workweek in which overtime is owed;

     iii.     statutory liquidated damages;

     iv.     reasonable attorney's fees and costs.

106.     As employers, Defendants are jointly and severally liable to Plaintiff and the 216(b) Class.

## SECOND CLAIM FOR RELIEF
### Unpaid Overtime Under Colorado Law
COLO. REV. STAT. §§ 8-4-101, *et. seq.*, 8-6-118; Colorado Wage Order
(Named Plaintiff and the Rule 23 Class vs. the Entity Defendants)

107.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

108.     As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

109.     The Entity Defendants all employed the Plaintiff and those similarly situated.

110.     Plaintiff and those similarly situated worked for these Defendants as hourly employees and these Defendants failed to pay Plaintiffs and those similarly situated overtime for all hours worked in excess of 40 in a week.

111.     Defendants' failure to pay overtime was caused by their failure to account for downtime hours and pre- and post-shift hours for the purposes of calculating overtime.

112.     Therefore, Defendants failed to pay overtime pursuant to the relevant state statutes and regulations, including Colo. Rev. Stat. § 8-6-118 and the Colorado Wage Order.

113.     Plaintiff and those similarly are owed overtime premiums and any applicable damages, penalties, or attorney's fees under those protections and the CWCA, Colo. Rev. Stat. § 8-4-101, *et seq.*

114.     Plaintiff demands payment on behalf of herself and all putative class members for whom she brings this claim in an amount sufficient to provide compensation for all unpaid wages. This demand for payment is continuing and is made on behalf of any putative class members whose employment has terminated or terminates at any time in the future or who have been inadequately paid on any regular pay periods and who continue to be employed by these Defendants. Such payment should be made care of undersigned counsel at undersigned counsel's address, included in the signature block.

**THIRD CLAIM FOR RELIEF**
**Unpaid Straight Time Under The Colorado Wage Claim Act ("CWCA")**
**COLO. REV. STAT. §§ 8-4-101, *et seq.***
**(Plaintiff and The Rule 23 Class vs. the Entity Defendants)**

18

115.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

116.    As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

117.    The Entity Defendants all employed Plaintiff and those similarly situated.

118.    Plaintiff and those similarly situated worked for these Defendants as hourly employees and these Defendants failed to pay Plaintiff and those similarly situated for all hours worked.

119.    This unpaid time, including unpaid overtime, was caused by Defendants' failure to compensate Plaintiff and those similarly situated for downtime and pre- and post-shift time.

120.    As such, these Defendants failed to pay all wages due under the law and therefore violated state wage payment statutes, including Colo. Rev. Stat. § 8-4-101 *et seq.*

121.    Plaintiff and those similarly situated are entitled to damages and attorneys' fees for their unpaid time.

122.    Plaintiff demands payment on behalf of herself and all putative class members for whom she brings bring this claim in an amount sufficient to provide compensation for all unpaid wages. This demand for payment is continuing and is made on behalf of any putative class members whose employment has terminated or terminates at any time in the future or who have been inadequately paid on any regular pay periods and who continue to be employed by these Defendants. Such payment should be made care of undersigned counsel at undersigned counsel's address, included in the signature block.

## FOURTH CLAIM FOR RELIEF

**Unpaid Commissions Under The Colorado Wage Claim Act ("CWCA")**
**COLO. REV. STAT. §§ 8-4-101, *et seq.***
**(Plaintiff and The Rule 23 Class vs. the Entity Defendants)**

123.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

124.    As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

125.    The Entity Defendants all employed Plaintiff and those similarly situated.

126.    Plaintiff and those similarly situated worked for these Defendants as employees and these Defendants failed to pay Plaintiff and those similarly situated all wages due.

127.    These unpaid wages were caused by Defendants' failure to pay Plaintiff and those similarly situated the promised 5% commissions earned on each service performed, in accordance with terms of the contract between Plaintiff (and those similarly situated) and the Entity Defendants.

128.    As such, these Defendants failed to pay all wages due under the law and therefore violated state wage payment statutes, including Colo. Rev. Stat. § 8-4-101, *et seq.*

129.    Plaintiff and those similarly situated are entitled to damages and attorneys' fees for their unpaid wages.

130.    Plaintiff demands payment on behalf of herself and all putative class members for whom she brings bring this claim in an amount sufficient to provide compensation for all unpaid wages. This demand for payment is continuing and is made on behalf of any putative class members whose employment has terminated or terminates at any time in the future or who have been inadequately paid on any regular pay periods and who continue to be employed by these

Defendants. Such payment should be made care of undersigned counsel at undersigned counsel's address, included in the signature block.

### FIFTH CLAIM FOR RELIEF
**Civil Theft For Withholding Tips To Compel Labor**
**COLO. REV. STAT. §§ 18-4-401,** *et seq.*
**(Named Plaintiff and The Rule 23 Class vs. All Defendants)**

131.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

132.    As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

133.    By withholding tips until and unless Plaintiff and those similarly situated performed uncompensated labor, Defendants knowingly retained and/or exercised control over a thing of value without authorization and/or by threat.

134.     Defendants demanded that Plaintiff and those similarly situated perform uncompensated labor, to which Defendants were not legally entitled, as a condition of restoring their tips to Plaintiff and those similarly situated.

135.    Plaintiff and those similarly situated are therefore each entitled to the following pursuant to Colo. Rev. Stat. § 18-4-405:

     i.    $200 or three times the amount of actual damages sustained, whichever is greater;

     ii.    reasonable attorney's fees and costs.

### <u>DEMAND FOR JURY TRIAL</u>

136.    Plaintiff demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

137.  Plaintiff respectfully requests an Order from this Court:

a.   Certifying an opt-in class pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.*;

b.   Certifying the Rule 23 Class, naming the named Plaintiff as class representative of the class, and naming Plaintiff's counsel as class counsel;

c.   granting judgment in favor of Plaintiff and against all Defendants;

d.   awarding Plaintiff and the Rule 23 Class their actual damages and any applicable statutory damages;

e.   awarding Plaintiff and those similarly situated damages and liquidated damages under the FLSA;

f.   awarding Plaintiff and those similarly situated $200 or treble damages, whichever is greater, under Colorado's Rights in Stolen Property Statute;

g.   awarding Plaintiff and those similarly situated their costs;

h.   awarding Plaintiff and those similarly situated their attorneys' fees;

i.   awarding Plaintiff and those similarly situated prejudgment and post-judgment interest, when allowable by law; and

j.   granting such other relief as this Court deems just and proper.

Respectfully Submitted,

KILLMER, LANE & NEWMAN, LLP

*s/ Mari Newman*
Mari Newman
Liana Orshan
543 Champa St., Suite 400
Denver, CO 80202
Tel.: 303-571-1000
Fax: 303-571-1001
Email:  mnewman@kln-law.com
          lorshan@kln-law.com

TOWARDS JUSTICE

_s/ Alexander Hood_
Alexander Hood
David Seligman
1410 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org
        david@towardsjustice.org

Attorneys for Plaintiffs