**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  18-cv-01212-PAB-MEH

LISA MILES aka ELISA MARIE MILES; and those similarly situated,

Plaintiffs,

v.

BKP INC.;
ELLA BLISS BEAUTY BAR LLC;
ELLA BLISS BEAUTY BAR-2, LLC;
ELLA BLISS BEAUTY BAR-3, LLC;
BROOKE VANHAVERMATT;
KELLY HUELSING; AND
PETER KOCLANES,

Defendants.

---

**ANSWER AND COUNTERCLAIMS**

---

Defendants hereby answer Plaintiff's Class and Collective Action Complaint ("Complaint") as follows:

## I.      INTRODUCTION

1.      The business operation of Ella Bliss Beauty Bar is founded on the exploitation of its workers.

RESPONSE:   Defendants deny the allegations in paragraph 1 of the Complaint.

2.      Customers pay almost $80 for a manicure and a pedicure, yet out of that almost $80, Plaintiff Lisa Miles, like other nail technicians, would receive only $.85 cents in commission. When Ella Bliss had offered Ms. Miles the job, it had promised to pay her $3.90 in commission for a manicure and pedicure service.

RESPONSE:   Defendants admit that customers pay certain prices for services and that Plaintiff and other nail technicians who perform the services receive a commission on those services based on the nail technician's hourly service rate.  Defendants deny the remaining allegations in paragraph 2 of the Complaint.

3.       Ella Bliss also did not pay Lisa Miles or any of the other Service Technicians at any of its three stores *any amount whatsoever* for the hours that they spent cleaning and performing other mandatory chores. In fact, Ella Bliss did not employ janitors or a cleaning service and relied exclusively on the unpaid labor of its nail technicians and other Service Technicians to clean the salon.

RESPONSE:   Defendants deny the allegations in paragraph 3 of the Complaint.

4.       Ella Bliss's policies and practices governing compensation, including its failure to pay Plaintiff and its other Service Technicians promised commissions, its failure to pay them for the time that they spent cleaning and doing other chores, and its failure to pay overtime, are illegal and constitute, among other things, violations of the Fair Labor Standards Act and the Colorado Wage Claim Act.

RESPONSE:   Defendants deny the allegations in paragraph 4 of the Complaint.

## II.      JURISDICTION AND VENUE

5.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under state law.

RESPONSE:   Defendants admit that this Court has jurisdiction over this matter.

2

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in Colorado or are registered to do business in Colorado.

RESPONSE:   Defendants admit that venue is proper in this Court.

### III.    PARTIES

7.      At all times material to the allegations of the complaint, Plaintiff was a resident of and domiciled in the District of Colorado.

RESPONSE:   Defendants are without information sufficient to admit or deny the allegations in paragraph 7 of the Complaint and therefore deny the same.

8.      Plaintiff signed a written consent to be a named Plaintiff in a Fair Labor Standards Act collective action and the signed consent is attached to this Complaint as Exhibit 1.

RESPONSE:   Defendants admit the allegations in paragraph 8 of the Complaint.

9.      At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR LLC (hereinafter "Ella Bliss 1") was a Colorado limited liability company with its principal place of business in the District of Colorado.

RESPONSE:   Defendants admit the allegations in paragraph 9 of the Complaint.

10.     At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR - 2, LLC (hereinafter "Ella Bliss 2") was a Colorado limited liability company with its principal place of business in the District of Colorado.

RESPONSE:   Defendants admit the allegations in paragraph 10 of the Complaint.

11.     At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR - 3, LLC (hereinafter "Ella Bliss 3") was a Colorado limited liability company with its principal place of business in the District of Colorado.

48678918.4

RESPONSE:    Defendants admit the allegations in paragraph 11 of the Complaint.

12.     At all times material to the allegations of the complaint, Defendant BKP INC. (hereinafter "BKP") was a Colorado corporation with its principal place of business in the District of Colorado.

RESPONSE:   Defendants admit the allegations in paragraph 12 of the Complaint.

13.     Ella Bliss 1, Ella Bliss 2, Ella Bliss 3, and BKP shall hereinafter be referred to as the "Entity Defendants."

RESPONSE:    The statement in paragraph 13 is not a factual allegation and requires no response.

14.     At all times material to the allegations of the complaint, Defendant Vanhavermaat was a natural person residing and domiciled in the District of Colorado.

RESPONSE:    Defendants admit the allegations in paragraph 14 of the Complaint.

15.     At all times material to the allegations of the complaint, Defendant Koclanes was a natural person residing and domiciled in the District of Colorado.

RESPONSE:    Defendants admit the allegations in paragraph 15 of the Complaint.

16.     At all times material to the allegations of the complaint, Defendant Koclanes was a natural person residing and domiciled in the District of Colorado.

RESPONSE:    Defendants admit the allegations in paragraph 16 of the Complaint.

## IV.    STATEMENT OF FACTS

### I.    Ella Bliss

17.    Brooke Vanhavermaat, her sister, Kelly Huelsing, and their father, Peter Koclanes formed BKP in 2013. Defendant Vanhavermaat is the President of BKP, and Defendant Huelsing is the Vice President.

RESPONSE:   Defendants admit the allegations in paragraph 17 of the Complaint.

18.    BKP is the parent company of Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3. Ella Bliss 1 is located in Greenwood Village, Colorado; Ella Bliss 2 is in Denver, Colorado; and Ella Bliss 3 is in Highlands Ranch, Colorado.

RESPONSE:   Defendants admit the allegations in paragraph 18 of the Complaint.

19.    Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3 (collectively "Ella Bliss") provide services like those typically offered at a day spa or salon, including massages, manicures and pedicures, blowouts, facials, waxing, eyelash extensions, and makeup consultations and application.

RESPONSE:   Defendants admit the allegations in paragraph 19 of the Complaint.

20.    Customers at Ella Bliss pay a set price for each service they purchase. For example, Ella Bliss charges $78 for a manicure/pedicure combination. However, customers can pay a monthly membership fee and receive membership benefits that include a discounted rate on services.

RESPONSE:   Defendants admit that Ella Bliss customers pay a set price for each service they purchase.  Defendants admit that customers can pay a monthly membership fee and

receive benefits, including a discounted rate on services.  Defendants deny the remaining allegations in paragraph 20 of the Complaint.

21.    Ella Bliss employs various "Service Technicians" to perform the services that it offers. Service Technicians include nail technicians, cosmetologists, estheticians, and massage therapists.

RESPONSE:    Defendants admit the allegations in paragraph 21 of the Complaint.

22.    There are approximately twenty-five (25) to thirty-five (35) Service Technicians employed by each Ella Bliss location at any given time.

RESPONSE:    Defendants deny the allegations in paragraph 22 of the Complaint.

23.    All Service Technicians employed by Ella Bliss were subject to the same employment policies.

RESPONSE:    Defendants deny the allegations in paragraph 23 of the Complaint.

**II.    Plaintiff's Employment by Defendants**

24.    Defendants hired Plaintiff, Lisa Miles, to work as a nail technician in March 2016.

RESPONSE:    Defendants admit the allegations in paragraph 24 of the Complaint.

25.    Plaintiff worked primarily at Ella Bliss 2 in Denver, but she also worked intermittently at Ella Bliss 1 in Greenwood Village for most of her employment.

RESPONSE:    Defendants admit the allegations in paragraph 25 of the Complaint.

26.    Plaintiff and Ella Bliss entered into a contract in which Ella Bliss agreed that it would pay Plaintiff $17 per hour, plus 5% commissions on services. In approximately fall 2016, Plaintiff received a raise to $18 per hour.

RESPONSE:   Defendants admit that Plaintiff was initially paid $17 per service hour and later received a raise to $18 per service hour.  Defendants admit that Plaintiff also was paid 5% commission on her service rate for services performed.  Defendants deny the remaining allegations in paragraph 26 of the Complaint.

27.      Also in fall 2016, Plaintiff began working as a "lead" nail technician. Leads were responsible for training the other Service Technicians and "setting a good example."

RESPONSE:   Defendants admit that Plaintiff worked as a "lead" nail technician from October 31, 2016 until July 27, 2017.  Defendants admit that leads were responsible for training other Service Technicians and were paid their hourly service rate to do so.  Defendants admit that leads, like all Ella Bliss employees, were expected to set a good example.  Defendants deny that Plaintiff set a good example.  Defendants deny the remaining allegations in paragraph 27 of the Complaint.

28.      Plaintiff worked as a lead nail technician until approximately July 2017, when she stepped down from her position as lead.

RESPONSE:   Defendants admit the allegations in paragraph 28 of the Complaint.

29.      During her employment, Plaintiff consistently complained about Ella Bliss's pay practices. Plaintiff also complained about other practices at Ella Bliss, including that employees made comments that were inappropriate and that Ella Bliss retained nail technicians who were not competent at their job.

RESPONSE:   Defendants deny the allegations in paragraph 29 of the Complaint.

30.     In September 2017, Ella Bliss terminated Plaintiff's employment. Defendant Koclanes informed Plaintiff of her termination. When Plaintiff asked him why Ella Bliss was firing her, he refused to provide a reason.

RESPONSE:   Defendants deny that Plaintiff was not provided a reason for termination of her employment.  Defendants admit the remaining allegations in paragraph 30 of the Complaint.

## III.   Defendants Jointly Employed Plaintiff and Those Similarly Situated

31.     The individual Defendants, Defendants Vanhavermaat, Koclanes, and Huelsing, were each very involved in setting policies for Ella Bliss and managing and supervising the day-to-day operations at all Ella Bliss locations.

RESPONSE:  Defendants admit that Vanhavermaat and Huelsing were involved in setting some policies for Ella Bliss.  Defendants admit that Vanhavermaat and Huelsing would assist with day-to-day operations if requested to do so by management.  Defendants deny the remaining allegations in paragraph 31 of the Complaint.

32.     Defendant Vanhavermaat, either individually or in consultation with Defendants Koclanes and Huelsing, set all policies, rules, and standards for Ella Bliss Service Technicians. Defendants Vanhavermaat, Koclanes, and Huelsing, as well as the store managers, implemented these policies, rules, and standards.

RESPONSE:   Defendants admit that Vanhavermaat and Huelsing were involved in setting some policies for Ella Bliss.  Defendants admit that Vanhavermaat, Koclanes, and Huelsing assisted management in implementing policies, rules or standards at time or when requested to do so.  Defendants deny the remaining allegations in paragraph 32 of the Complaint.

33.     In addition to setting the rules for Service Technicians, Defendants Vanhavermaat, Koclanes, and Huelsing controlled Service Technicians' conditions of employment by personally supervising their work. The individual Defendants were often present at each of the three stores, and usually each Defendant came by each store at least once a week to supervise.

RESPONSE:   Defendants admit that Vanhavermaat, Koclanes, and Huelsing spent time at each Ella Bliss store.  Defendants deny the remaining allegations in paragraph 33 of the Complaint.

34.     Defendants Vanhavermaat, Koclanes, and Huelsing also ran quarterly, mandatory meetings for all Ella Bliss employees, including Service Technicians. Defendant Vanhavermaat led the meetings the majority of the time, but Defendants Koclanes and Huelsing also spoke at the meetings. During the meetings, Defendants Vanhavermaat, Koclanes, and Huelsing communicated to the employees company rules and policies, including those governing Service Technicians' work and compensation.

RESPONSE:   Defendants admit the allegations in paragraph 34 of the Complaint.

35.     Furthermore, Defendants Vanhavermaat, Koclanes, and Huelsing made decisions regarding the hiring and firing of the Service Technicians.

RESPONSE:   Defendants admit the allegations in paragraph 35 of the Complaint.

36.     Along with the individual Defendants, the entity Defendants—BKP, Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3—jointly employed Plaintiff and those similarly situated.

RESPONSE:   Defendants deny the allegations in paragraph 36 of the Complaint.

37.     The Entity Defendants jointly exercised substantial control over the terms and conditions of the work of Plaintiff and other Service Technicians.

RESPONSE:    Defendants deny the allegations in paragraph 37 of the Complaint.

38.     The Entity Defendants co-determined the policies, procedures, and rules, including those relating to compensation, benefits, and hours, governing all Service Technicians at all three Ella Bliss stores.

RESPONSE:    Defendants deny the allegations in paragraph 38 of the Complaint.

39.     Through the individual Defendants, who controlled the Entity Defendants, the Entity Defendants jointly had the ability to fire and hire Service Technicians and decide when and at what store a Service Technician would work.

RESPONSE:    Defendants deny the allegations in paragraph 39 of the Complaint.

40.     While most of Plaintiff's paychecks were issued by Ella Bliss 2, BKP occasionally issued Plaintiff's paychecks.

RESPONSE:    Defendants deny the allegations in paragraph 40 of the Complaint.

**IV.     Ella Bliss's Illegal Pay Practices**

41.     Policies were companywide at all Ella Bliss stores and applied to all Service Technicians.

RESPONSE:    Defendants admit that some policies applied to all Ella Bliss stores and/or to all Service Technicians.  Defendants deny the remaining allegations in paragraph 41 of the Complaint.

42.     Ella Bliss made clear that its wage policies applied to all Service Technicians as follows.

48678918.4

RESPONSE:   Defendants are without information sufficient to admit or deny the allegations in paragraph 42 of the Complaint and therefore deny the same.

43.     Ella Bliss provided each Service Technician a form offer letter—which, when accepted by the Service Technician, became a contract—and a "Customer Service Contract" setting forth Ella Bliss's policies. These policies provided, as discussed more fully below: one, Service Technicians had to arrive fifteen minutes prior to the start time of each scheduled shift; two, Ella Bliss did not pay its Service Technicians for downtime; and three, Ella Bliss would pay a percentage commission for each service the Technician performed.

RESPONSE:   Defendants admit that Service Technicians received offer letters. Defendants admit that Service Technicians were asked to arrive fifteen minutes prior to the start of the shift.  Defendants admit that Service Technicians received a commission for each service hour of work.  Defendants deny the remaining allegations in paragraph 43 of the Complaint.

44.     In addition to the contract, Ella Bliss communicated rules and polices that governed Service Technicians through its Handbook and via group emails to all Service Technicians. The Handbook and emails discussed, among other things, Ella Bliss's policy regarding downtime.

RESPONSE:   Defendants admit that Ella Bliss Beauty Bar has a Handbook and at times uses email to communicate with employees about employee matters, including rules and policies. Defendants admit that Ella Bliss Beauty Bar has policies related to downtime.  Defendants deny the remaining allegations in paragraph 44 of the Complaint.

45.     Ella Bliss also held mandatory companywide meetings, at least quarterly, at which it discussed its policies, including those regarding downtime and commissions.

RESPONSE:   Defendants admit that Ella Bliss Beauty Bar holds companywide meetings from time to time.  Defendants admit that policies, including downtime and commission policies, are discussed at these meetings from time to time.  Defendants deny the remaining allegations in paragraph 45 of the Complaint.

46.      Ella Bliss explicitly and willfully maintained policies that violate state and federal wage and hour laws in at least the following ways.

RESPONSE:   Defendants deny the allegations in paragraph 46 of the Complaint.

**A. Failure to Pay for Downtime**

47.      After the first 60 days of employment, Ella Bliss does not compensate its Service Technicians for downtime. Rather, Ella Bliss only pays for "service time," meaning the time when the Technicians are serving customers (e.g., when nail technicians are doing a manicure or pedicure).

RESPONSE:   Defendants admit that some Service Technicians receive downtime compensation only during the first 60 days of employment.  Defendants deny the remaining allegations in paragraph 47 of the Complaint.

48.      Ella Bliss's contract with Plaintiff states that Plaintiff would be paid $17/hour per "service hour" but she would not receive any downtime pay after the first 60 days of employment. The contract provided that Ella Bliss would pay Plaintiff $5.50 /hour for downtime for her first 60 days.

RESPONSE:   Defendants admit that Plaintiff initially made $17 per service hour and received $5.50 in downtime pay for the first 60 days of employment.  Defendants deny the remaining allegations in paragraph 48 of the Complaint.

49.     Although Ella Bliss paid other Service Technicians and even other nail technicians a different hourly rate, the policies to which Plaintiff was subject applied to every Service Technician at all three locations.

RESPONSE:   Defendants are without sufficient information to admit or deny the allegations in paragraph 49 of the Complaint and therefore deny the same.

50.     The policies provided that the only Service Technicians paid for downtime (after the first 60 days of employment) were assistant lead technicians and lead technicians. Ella Bliss's policy during Plaintiff's employment was to pay $5.50/hour to assistant lead technicians for downtime and $6.50/hour to lead technicians for downtime. However, the rate was negotiable; for instance, Plaintiff earned $7/hour for downtime when she worked as a lead technician.

RESPONSE:   Defendants admit that Plaintiff earned $7 per hour for downtime when she worked as a lead technician.  Defendants deny the remaining allegations in paragraph 50 of the Complaint.

51.     During downtime, Ella Bliss prohibited its Service Technicians from leaving the premises of the store if they had less than an hour between scheduled services.

RESPONSE:   Defendants deny the allegations in paragraph 51 of the Complaint.

52.     If a Service Technician had more than an hour between scheduled services, Ella Bliss sometimes allowed the Technicians to leave the premises, but only with explicit permission from the manager. If allowed to leave, Ella Bliss expected Service Technicians to be on-call and able to return within 15 minutes in order to serve walk-in customers who had not booked services in advance.

RESPONSE:   Defendants admit that, generally, Technicians could clock-out and leave the premises if they had sufficient time between services.  Defendants admit that it asked Technicians to be able to return within 30 minutes to serve walk-up customers.  Defendants deny the remaining allegations in paragraph 52 of the Complaint.

53.     Ella Bliss communicated through group emails to all Service Technicians its requirements that Service Technicians remain on the premises if they had less than an hour between scheduled services and remain on-call if they had more than one hour between scheduled services. The emails reminded the Technicians that leaving the premises during downtime was a "privilege" not a "right."

RESPONSE:   Defendants admit that Service Technicians were not permitted to clock out and go "on-call" unless they had an hour or more between scheduled services.   Defendants admit that Service Technicians needed permission to go "on-call," and therefore on-call status was a privilege and not a right.  Defendants deny the remaining allegations in paragraph 53 of the Complaint.

54.     During downtime, Ella Bliss expected its Service Technicians to perform tasks for the benefit of Ella Bliss, such as cleaning and folding towels. Indeed, Ella Bliss explicitly required Plaintiff to agree in her "Customer Service Contract" that she would "participate in downtime activities when not in service."

RESPONSE:   Defendants admit that Technicians were asked to participate in downtime activities when not in service, including tasks such as light cleaning and folding towels.  Defendants deny the remaining allegations in paragraph 54 of the Complaint.

55.     Ella Bliss did not employ a janitorial service and instead relied on its Service Technicians to do all the cleaning. If the Service Technicians did not do a good enough job cleaning, their supervisors, including Defendants Vanhavermaat and Huelsing and especially Defendant Koclanes, would reprimand them.

RESPONSE:    Defendants deny the allegations in paragraph 55 of the Complaint.

56.     Ella Bliss also held companywide meetings at which managers, including Defendant Vanhavermaat, would tell the Service Technicians that they were not doing a good enough job cleaning on their downtime and that they needed to do better.

RESPONSE:    Defendants deny the allegations in paragraph 56 of the Complaint.

**B. Failure to Pay for Pre- and Post-Shift Work**

57.     Pursuant to Plaintiff's "Customer Service Contract," Ella Bliss required her to "arrive fifteen minutes prior to [the] start time of [her] scheduled shift." Ella Bliss also required Plaintiff to "participate in beginning/end of shift duties" and "check out with Concierge, Lead, or Management before leaving for the day."

RESPONSE:    Defendants admit that Plaintiff was required to clock in fifteen minutes prior to the start of her scheduled shift.  Defendants admit that Plaintiff had pre-shift and post-shift duties she needed to perform.  Defendants admit that Plaintiff was required to check out with a manager or shift supervisor before leaving.  Defendants deny the remaining allegations in paragraph 57 of the Complaint.

58.     Ella Bliss required its Service Technicians to arrive 15 minutes early in order to prepare and set up for their first service.

RESPONSE:    Defendants admit the allegations in paragraph 58 of the Complaint.

59.     Ella Bliss also required its Service Technicians to stay after the end of their last service to do chores. It typically took the Service Technicians at least thirty minutes at the end of each shift to finish their chores.

RESPONSE:    Defendants admit that Service Technicians were asked to complete certain end-of-shift tasks before clocking out.  Defendants deny the remaining allegations in paragraph 59 of the Complaint.

60.     Service Technicians' chores included cleaning their service area and implements. Additionally, each type of Service Technician had technician specific chores. For example, nail technicians had to fold and put away towels, restock their stations, and clean pedicure bowls.

RESPONSE:    Defendants admit that Service Technicians had certain duties they needed to complete related to the services they provided.  Defendants deny the remaining allegations in paragraph 60 of the Complaint.

61.     Service Technicians also had to do general cleaning, like cleaning the bathroom and kitchen.

RESPONSE:    Defendants deny the allegations in paragraph 61 of the Complaint.

62.     Ella Bliss expected each Technician to do two to four chores each shift, including at least one technician specific chore and one general cleaning chore.

RESPONSE:    Defendants admit that Service Technicians had certain duties they needed to complete each shift related to the services they provided.  Defendants deny the remaining allegations in paragraph 62 of the Complaint.

63.     Ella Bliss did not pay its Service Technicians for their pre- and post-shift work.

RESPONSE:    Defendants deny the allegations in paragraph 63 of the Complaint.

### C. Withholding Tips to Compel Work

64.     Ella Bliss required the Service Technicians to check out with a manager before they could leave at the end of their shift.

RESPONSE:     Defendants admit the allegations in paragraph 64, with the caveat that Service Technicians could also check out with a shift supervisor.

65.     The managers kept the Service Technicians' cash tips in a lock box behind the front desk. In order for a Service Technician to collect her tips from the shift, Ella Bliss required her to check out with a manager.

RESPONSE:     Defendants admit that cash tips were kept in a lock box behind the front desk for security.  Defendants admit that Service Technicians received their cash tips by picking them up from a manager.  Defendants deny the remaining allegations in paragraph 65 of the Complaint.

66.     Ella Bliss ensured that the Service Technicians did their chores by withholding the Technicians' tips until they finished their chores. The managers withheld a Service Technician's tips until the manager verified that the Service Technician had completed her chores.

RESPONSE:     Defendants deny the allegations in paragraph 66 of the Complaint.

67.     If the Service Technician did not check out with a manager or did not do her chores, Ella Bliss kept her tips, sometimes for up to a week at a time, until she did her chores at the end of another shift.

RESPONSE:     Defendants deny the allegations in paragraph 67 of the Complaint.

### D. Failure to Pay Commissions

68.     In Plaintiff's contract with Ella Bliss, Ella Bliss agreed to pay her "5% commission on services."

RESPONSE:   Defendants admit that one of Plaintiff's offer letters stated she would receive "5% commission on services."  Defendants deny the remaining allegations in paragraph 68 of the Complaint.

69.     The plain language of the contract provision, and Plaintiff's understanding of the provision, meant that Ella Bliss would pay Plaintiff 5% of the service price for each service she performed.

RESPONSE:   Defendants deny the allegations in paragraph 69 of the Complaint.

70.     For example, the one-hour Signature Nail Service—a manicure and pedicure— cost the customer $78. Plaintiff thus should have received a $3.90 commission on such a service.

RESPONSE:   Defendants deny the allegations in paragraph 70 of the Complaint.

71.     Regular practice in the industry is to pay nail technicians and other similar service providers a commission calculated in this manner: based on the service rate—the cost to the customer—of the service performed.

RESPONSE:   Defendants deny the allegations in paragraph 71 of the Complaint.

72.     However, despite what was stated in Ella Bliss's Service Technicians' contracts and despite the industry standard, Ella Bliss paid its Service Technicians commissions based on their hourly rate. So, if Plaintiff worked for one hour to complete a Signature Nail Service, Ella Bliss paid her only $.85 in commission—5% of her hourly rate of $17—instead of the $3.90 to which she was entitled.

RESPONSE:    Defendants admit that Service Technicians received a 5% commission for services based on their hourly service rate.  Defendants deny the remaining allegations in paragraph 72 of the Complaint.

73.    Defendants' failure to pay commissions on the service rate applied to all Service Technicians. To ensure that there was no confusion, near when Plaintiff first started working for Ella Bliss, Defendant Vanhavermaat held a mandatory companywide meeting at which she reiterated that (contrary to its written contract) Ella Bliss paid commissions on each Service Technician's rate (their hourly pay), not the cost of the service to the customer.

RESPONSE:    Defendants admit that Ella Bliss always paid commissions based on each Service Technician's hourly service rate, and the policy was confirmed in meetings.  Defendants deny the remaining allegations in paragraph 73 of the Complaint.

**V.    The Illegal Pay Policies and Practices Caused Unpaid Overtime**

74.    The off-the-clock time resulting from the illegal pay policies described above, including Ella Bliss's failure to pay for downtime and pre- and post-shift work, led to Plaintiff and other Service Technicians not being paid for all hours worked, which included unpaid overtime for hours worked in excess of 40 in a workweek.

RESPONSE:    Defendants deny the allegations in paragraph 74 of the Complaint.

75.    For example, if Plaintiff worked fifty hours a week including downtime and pre- and post-shift work, Ella Bliss paid her only for twenty to thirty-five hours: the amount of time when she was actually doing services.

RESPONSE:    Defendants deny the allegations in paragraph 75 of the Complaint.

76.     On average, Plaintiff worked twenty to thirty-five hours per week in service time, but she regularly worked more than forty hours a week including downtime and pre- and post-shift work time.

RESPONSE:     Defendants deny the allegations in paragraph 76 of the Complaint.

77.     Thus, although Service Technicians including Plaintiff often worked over forty hours a week, because Ella Bliss paid them only for service time and not for downtime and pre- and post-shift work, Ella Bliss never paid them any overtime pay.

RESPONSE:     Defendants deny the allegations in paragraph 77 of the Complaint.

78.     Ella Bliss did not pay Plaintiff overtime pay in almost every workweek during her employment with Ella Bliss.

RESPONSE:     Defendants admit that Ella Bliss did not pay Plaintiff overtime in workweeks in which she did not work overtime.  Defendants deny the remaining allegations in paragraph 78 of the Complaint.

79.     For example, during the work week of Sunday, May 29, 2016, Ella Bliss compensated Plaintiff for approximately thirty hours. Because of the illegal pay policies, she was not compensated for at least 10 hours of straight time and at least 10 to 15 hours of overtime.

RESPONSE:     Defendants deny the allegations in paragraph 79 of the Complaint.

80.     As another example, during the work week of Sunday, June 5, 2016, Ella Bliss compensated Plaintiff for approximately thirty hours. Because of the illegal pay policies, she was not compensated for at least 10 hours of straight time and at least 10 to 15 hours of overtime.

RESPONSE:     Defendants deny the allegations in paragraph 80 of the Complaint.

## V.    RULE 23 CLASS ALLEGATIONS

81.    Plaintiff alleges all claims, other than the FLSA claims, as a Fed R. Civ. P. 23 class action on her own behalf and on behalf of classes for which she seeks certification.

RESPONSE:   Defendants deny that Plaintiff can satisfy the requirements of a Rule 23 class action and therefore deny the allegations in paragraph 81 of the Complaint.

82.    Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the "Rule 23 Class" as follows:

> ALL CURRENT AND FORMER SERVICE TECHNICIANS
> WHO WORKED AT ANY OF ELLA BLISS BEAUTY BAR'S
> THREE LOCATIONS

RESPONSE:   Defendants deny that Plaintiff has properly identified a Rule 23 class and deny that Plaintiff can satisfy the requirements of a Rule 23 class action.  Defendants therefore deny the allegations in paragraph 82 of the Complaint.

83.    The class is so numerous that joinder of all potential class members is impracticable. Plaintiff does not know the exact size of the class since that information is within the control of Defendants. However, Plaintiff estimates that, based on the size of Ella Bliss's operations, the class is composed of well over 80 persons. The exact size of the class will be easily ascertainable from Defendants' records.

RESPONSE:   Defendants deny the allegations in paragraph 83 of the Complaint.

84.    There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants' pay practices and Defendants' failure to pay employees all they are legally owed.

RESPONSE:   Defendants deny the allegations in paragraph 84 of the Complaint.

48678918.4

85.     The class claims asserted by Plaintiff are typical of the claims of all the potential class members because she experienced the same or similar working conditions and pay practices as Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage, hourly workers like the class members here, who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system pro se, and whose small claims make it difficult to retain legal representation if they do seek it.

RESPONSE:    Defendants deny the allegations in paragraph 85 of the Complaint.

86.     Plaintiff will fairly and adequately protect and represent the interests of the class. Plaintiff was Defendants' employee and was a victim of the same violations of law as the other class members, including numerous violations of federal and state wage and hour laws.

RESPONSE:    Defendants admit that Plaintiff was an employee of Ella Bliss. Defendants deny the remaining allegations in paragraph 86 of the Complaint.

87.     Plaintiff is represented by counsel experienced in litigation on behalf of low-wage workers and in wage and hour class actions.

RESPONSE:    Defendants are without information sufficient to admit or deny the allegations in paragraph 87 of the Complaint and therefore deny the same.

88.     The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

48678918.4

RESPONSE:    Defendants deny the allegations in paragraph 88 of the Complaint.

89.      Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent federal and state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

RESPONSE:    Defendants deny the allegations in paragraph 89 of the Complaint.

90.      Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action.

RESPONSE:    Defendants are without information sufficient to admit or deny the allegations in paragraph 90 of the Complaint and therefore deny the same.

91.      Plaintiff is unaware of any pending litigation commenced by members of the class concerning the instant controversy.

RESPONSE:    Defendants are without information sufficient to admit or deny the allegations in paragraph 91 of the Complaint and therefore deny the same.

92.      It is desirable to concentrate this litigation in this forum because all parties are domiciled in this jurisdiction or are registered to do business in this jurisdiction.

RESPONSE:    Defendants are without information sufficient to admit or deny the allegations in paragraph 92 of the Complaint and therefore deny the same.

93.      This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

RESPONSE:   Defendants deny the allegations in paragraph 93 of the Complaint.

94.     The contours of the class will be easily defined by reference to the payroll

documents Defendants were legally required to create and maintain. *See* 29 C.F.R. § 516, *et seq.*

RESPONSE:   Defendants deny the allegations in paragraph 94 of the Complaint.

## VI.   29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

95.     Plaintiff brings her FLSA claim as a collective action, pursuant to 29 U.S.C. §

216(b), on behalf of herself and on behalf of all other similarly situated current and former

employees of Defendants.

RESPONSE:   Defendants deny that Plaintiff can satisfy the requirements of a collective

action under 29 U.S.C. § 216(b) and therefore deny the allegations in paragraph 95 of the

Complaint.

96.     Pending any modifications necessitated by discovery, Plaintiff

preliminarily defines the "216(b) Class" as follows:

> ALL CURRENT AND FORMER SERVICE TECHNICIANS
> WHO WORKED AT ANY OF ELLA BLISS BEAUTY BAR'S
> THREE LOCATIONS

RESPONSE:   Defendants deny that Plaintiff has properly identified a collective action

class under 29 U.S.C. § 216(b) and deny that Plaintiff can satisfy the requirements of a collective

action under § 216(b).  Defendants therefore deny the allegations in paragraph 96 of the

Complaint.

97.     All potential FLSA class members are similarly situated because, among other

things, they all worked as Service Technicians for Defendants. Moreover, all members of the

class suffered from the same policies of Defendants resulting in unpaid overtime in overtime

workweeks, including:

a.      Failure to account for "downtime" work in determining overtime compensation.

b.      Failure to account for pre- and post-shift work in determining overtime compensation.

RESPONSE:    Defendants deny the allegations in paragraph 97, 97a, and 97b of the Complaint.

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unpaid Overtime Under The Fair Labor Standards Act  29 U.S.C. §§ 201, *et seq*.
(Named Plaintiff and the 216(b) Class vs. All Defendants)**

98.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

RESPONSE:    Defendants incorporate their responses to Paragraphs 1-97 as though fully set forth herein.

99.     Plaintiff brings her FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all other similarly situated current and former employees of Defendants.

RESPONSE:    Defendants deny that Plaintiff can satisfy the requirements of a collective action under 29 U.S.C. § 216(b) and therefore deny the allegations in paragraph 99 of the Complaint.

100.    All Defendants employed Plaintiff and those similarly situated pursuant to the Fair Labor Standards Act.

RESPONSE:    Defendants deny the allegations in paragraph 100 of the Complaint.

101.    Each Defendant is or was a member of an enterprise that had annual revenues in excess of $500,000 during Plaintiff's employment and had two or more employees that handled goods or materials that had been moved in or produced for interstate commerce. Defendants were therefore part of an enterprise or enterprises engaged in commerce pursuant to 29 U.S.C. § 203(s)(1).

RESPONSE:   Defendants admit the allegations in paragraph 101 of the Complaint with respect to Defendants Ella Bliss Beauty Bar LLC; Ella Bliss Beauty Bar-2, LLC; and Ella Bliss Beauty Bar-3, LLC.  Defendants deny the remaining allegations in paragraph 101 of the Complaint.

102.    As employers of Plaintiff and those similarly situated, Defendants named in this claim were required to pay Plaintiff and those similarly situated overtime pursuant to 29 U.S.C. § 207 and failed to do so.

RESPONSE:   Defendants deny the allegations in paragraph 102 of the Complaint.

103.    Defendants' failure to pay overtime was caused by their failure to include downtime and pre- and post-shift work as compensable time for the purposes of calculating FLSA overtime.

RESPONSE:   Defendants deny the allegations in paragraph 103 of the Complaint.

104.    Defendants' failure to pay their employees as required by the FLSA was willful pursuant to 29 U.S.C. § 255(a).

RESPONSE:   Defendants deny the allegations in paragraph 104 of the Complaint.

105.    Plaintiff and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216:

     i. unpaid overtime;

     ii. gap time for any workweek in which overtime is owed;

     iii. statutory liquidated damages;

     iv. reasonable attorney's fees and costs.

RESPONSE:    Defendants deny the allegations in paragraph 105 of the Complaint.

106.    As employers, Defendants are jointly and severally liable to Plaintiff and the 216(b) Class.

RESPONSE:    Defendants deny the allegations in paragraph 106 of the Complaint.

### VIII.   SECOND CLAIM FOR RELIEF
#### Unpaid Overtime Under Colorado Law
#### COLO. REV. STAT. §§ 8-4-101, *et. seq.*, 8-6-118; Colorado Wage Order
#### (Named Plaintiff and the Rule 23 Class vs. the Entity Defendants)

107.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

RESPONSE:    Defendants incorporate their responses to Paragraphs 1-106 as though fully set forth herein.

108.    As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

RESPONSE:    Defendants deny that Plaintiff can satisfy the requirements of a Rule 23 class action and therefore deny the allegations in paragraph 108 of the Complaint.

109.    The Entity Defendants all employed the Plaintiff and those similarly situated.

RESPONSE:    Defendants deny the allegations in paragraph 109 of the Complaint.

27

110.     Plaintiff and those similarly situated worked for these Defendants as hourly employees and these Defendants failed to pay Plaintiffs and those similarly situated overtime for all hours worked in excess of 40 in a week.

RESPONSE:   Defendants admit that Plaintiff and other Service Technicians were hourly employees.  Defendants deny the remaining allegations in paragraph 110 of the Complaint.

111.     Defendants' failure to pay overtime was caused by their failure to account for downtime hours and pre- and post-shift hours for the purposes of calculating overtime.

RESPONSE:   Defendants deny the allegations in paragraph 111 of the Complaint.

112.     Therefore, Defendants failed to pay overtime pursuant to the relevant state statutes and regulations, including Colo. Rev. Stat. § 8-6-118 and the Colorado Wage Order.

RESPONSE:   Defendants deny the allegations in paragraph 112 of the Complaint.

113.     Plaintiff and those similarly are owed overtime premiums and any applicable damages, penalties, or attorney's fees under those protections and the CWCA, Colo. Rev. Stat. § 8-4-101, *et seq.*

RESPONSE:   Defendants deny the allegations in paragraph 113 of the Complaint.

114.     Plaintiff demands payment on behalf of herself and all putative class members for whom she brings this claim in an amount sufficient to provide compensation for all unpaid wages. This demand for payment is continuing and is made on behalf of any putative class members whose employment has terminated or terminates at any time in the future or who have been inadequately paid on any regular pay periods and who continue to be employed by these

28

Defendants. Such payment should be made care of undersigned counsel at undersigned counsel's address, included in the signature block.

RESPONSE:   Defendants deny that Plaintiff and putative class members are entitled to any relief whatsoever and therefore deny the allegations in paragraph 114.

**IX.    THIRD CLAIM FOR RELIEF**
**Unpaid Straight Time Under The Colorado Wage Claim Act ("CWCA")**
**COLO. REV. STAT. §§ 8-4-101, *et seq.***
**(Plaintiff and The Rule 23 Class vs. the Entity Defendants)**

115.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

RESPONSE:   Defendants incorporate their responses to Paragraphs 1-114 as though fully set forth herein.

116.    As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

RESPONSE:   Defendants deny that Plaintiff can satisfy the requirements of a Rule 23 class action and therefore deny the allegations in paragraph 116 of the Complaint.

117.    The Entity Defendants all employed Plaintiff and those similarly situated.

RESPONSE:   Defendants deny the allegations in paragraph 117 of the Complaint.

118.    Plaintiff and those similarly situated worked for these Defendants as hourly employees and these Defendants failed to pay Plaintiff and those similarly situated for all hours worked.

RESPONSE:   Defendants admit that Plaintiff and Service Technicians were hourly employees.  Defendants deny the remaining allegations in paragraph 118 of the Complaint.

119.    This unpaid time, including unpaid overtime, was caused by Defendants' failure to compensate Plaintiff and those similarly situated for downtime and pre- and post-shift time.

RESPONSE:    Defendants deny the allegations in paragraph 119 of the Complaint.

120.    As such, these Defendants failed to pay all wages due under the law and therefore violated state wage payment statutes, including Colo. Rev. Stat. § 8-4-101 *et seq.*

RESPONSE:    Defendants deny the allegations in paragraph 120 of the Complaint.

121.    Plaintiff and those similarly situated are entitled to damages and attorneys' fees for their unpaid time.

RESPONSE:    Defendants deny the allegations in paragraph 121 of the Complaint.

122.    Plaintiff demands payment on behalf of herself and all putative class members for whom she brings bring this claim in an amount sufficient to provide compensation for all unpaid wages. This demand for payment is continuing and is made on behalf of any putative class members whose employment has terminated or terminates at any time in the future or who have been inadequately paid on any regular pay periods and who continue to be employed by these Defendants. Such payment should be made care of undersigned counsel at undersigned counsel's address, included in the signature block.

RESPONSE:    Defendants deny that Plaintiff and putative class members are entitled to any relief whatsoever and therefore deny the allegations in paragraph 122.

## X.   FOURTH CLAIM FOR RELIEF
### Unpaid Commissions Under The Colorado Wage Claim Act ("CWCA")
### COLO. REV. STAT. §§ 8-4-101, *et seq.*
### (Plaintiff and The Rule 23 Class vs. the Entity Defendants)

123.   Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

RESPONSE:   Defendants incorporate their responses to Paragraphs 1-122 as though fully set forth herein.

124.   As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

RESPONSE:   Defendants deny that Plaintiff can satisfy the requirements of a Rule 23 class action and therefore deny the allegations in paragraph 124 of the Complaint.

125.   The Entity Defendants all employed Plaintiff and those similarly situated.

RESPONSE:   Defendants deny the allegations in paragraph 125 of the Complaint.

126.   Plaintiff and those similarly situated worked for these Defendants as employees and these Defendants failed to pay Plaintiff and those similarly situated all wages due.

RESPONSE:   Defendants admit that Plaintiff and certain Service Technicians were employees of Ella Bliss.  Defendants deny the remaining allegations in paragraph 126 of the Complaint.

127.   These unpaid wages were caused by Defendants' failure to pay Plaintiff and those similarly situated the promised 5% commissions earned on each service performed, in accordance with terms of the contract between Plaintiff (and those similarly situated) and the Entity Defendants.

RESPONSE:   Defendants deny the allegations in paragraph 127 of the Complaint.

31

128.    As such, these Defendants failed to pay all wages due under the law and therefore violated state wage payment statutes, including Colo. Rev. Stat. § 8-4-101, *et seq.*

RESPONSE:   Defendants deny the allegations in paragraph 128 of the Complaint.

129.    Plaintiff and those similarly situated are entitled to damages and attorneys' fees for their unpaid wages.

RESPONSE:   Defendants deny the allegations in paragraph 129 of the Complaint.

130.    Plaintiff demands payment on behalf of herself and all putative class members for whom she brings bring this claim in an amount sufficient to provide compensation for all unpaid wages. This demand for payment is continuing and is made on behalf of any putative class members whose employment has terminated or terminates at any time in the future or who have been inadequately paid on any regular pay periods and who continue to be employed by these Defendants. Such payment should be made care of undersigned counsel at undersigned counsel's address, included in the signature block.

RESPONSE:   Defendants deny that Plaintiff and putative class members are entitled to any relief whatsoever and therefore deny the allegations in paragraph 130.

## XI.    FIFTH CLAIM FOR RELIEF
### Civil Theft For Withholding Tips To Compel Labor COLO. REV. STAT. §§ 18-4-401, *et seq.*
### (Named Plaintiff and The Rule 23 Class vs. All Defendants)

131.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

RESPONSE:   Defendants incorporate their responses to Paragraphs 1-130 as though fully set forth herein.

132.     As set forth above, Plaintiff asserts this count on her own behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

RESPONSE:   Defendants deny that Plaintiff can satisfy the requirements of a Rule 23 class action and therefore deny the allegations in paragraph 132 of the Complaint.

133.     By withholding tips until and unless Plaintiff and those similarly situated performed uncompensated labor, Defendants knowingly retained and/or exercised control over a thing of value without authorization and/or by threat.

RESPONSE:   Defendants deny the allegations in paragraph 133 of the Complaint.

134.     Defendants demanded that Plaintiff and those similarly situated perform uncompensated labor, to which Defendants were not legally entitled, as a condition of restoring their tips to Plaintiff and those similarly situated.

RESPONSE:   Defendants deny the allegations in paragraph 134 of the Complaint.

135.     Plaintiff and those similarly situated are therefore each entitled to the following pursuant to Colo. Rev. Stat. § 18-4-405:

> i. $200 or three times the amount of actual damages sustained, whichever is greater;
>
> ii. reasonable attorney's fees and costs.

RESPONSE:   Defendants deny that Plaintiff and putative class members are entitled to any relief whatsoever and therefore deny the allegations in paragraph 135 of the Complaint.

## XII.        DEMAND FOR JURY TRIAL

136.     Plaintiff demands a trial by jury for all issues so triable.

RESPONSE:   Defendants admit that Plaintiff has demanded a trial by jury for all issues so triable.

## XIII. PRAYER FOR RELIEF

137.   Plaintiff respectfully requests an Order from this Court:

    a.   Certifying an opt-in class pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.*;

    b.   Certifying the Rule 23 Class, naming the named Plaintiff as class representative of the class, and naming Plaintiff's counsel as class counsel;

    c.   granting judgment in favor of Plaintiff and against all Defendants;

    d.   awarding Plaintiff and the Rule 23 Class their actual damages and any applicable statutory damages;

    e.   awarding Plaintiff and those similarly situated damages and liquidated damages under the FLSA;

    f.   awarding Plaintiff and those similarly situated $200 or treble damages, whichever is greater, under Colorado's Rights in Stolen Property Statute;

    g.   awarding Plaintiff and those similarly situated their costs;

    h.   awarding Plaintiff and those similarly situated their attorneys' fees;

    i.   awarding Plaintiff and those similarly situated prejudgment and post-judgment interest, when allowable by law; and

    j.   granting such other relief as this Court deems just and proper.

RESPONSE:   Defendants deny that plaintiff or any putative class member is entitled to any relief whatsoever.

138.   Defendants deny each allegation not expressly admitted herein.

139.   Each and every denial set forth above shall be deemed a Separate Defense, where appropriate, and each and every Separate Defense shall be deemed a response to the allegations of the Complaint, where appropriate.

## XIV.   SEPARATE DEFENSES

Defendants assert the following Separate Defenses without assuming any burden that would otherwise rest with Plaintiff or putative class members.  Defendants reserve the right to

48678918.4

amend this Answer if appropriate to assert additional defenses which may be revealed through discovery or as the case develops.

### First Separate Defense

The Complaint fails to state a claim upon which relief can be granted, in whole or in part.

### Second Separate Defense

Plaintiff's and putative class members' claims are barred, in whole or in part, by applicable statutes of limitations.

### Third Separate Defense

Plaintiff's and putative class members' claims are barred, in whole or in part, because Plaintiff is not a proper class representative.

### Fourth Separate Defense

Plaintiff cannot meet the requirements for a class action under Federal Rule of Civil Procedure 23 or for a collective action under 29 U.S.C. § 216(b).

### Fifth Separate Defense

Plaintiff's claims fail against certain Defendants because those Defendants are not "employers" within the meaning of applicable law.

### Sixth Separate Defense

Some activities alleged to be compensable are not compensable under applicable law.

### Seventh Separate Defense

Defendants at all times acted in good faith and with reasonable grounds for believing their actions comported with applicable law, including the FLSA, Colorado Wage Act, and Colorado Minimum Wage Order, by means of reliance on advice of legal counsel.

### Eighth Separate Defense

Plaintiff's claims are barred because any act or omission by one or more Defendants was in good faith in conformity with and in reliance on written administrative regulations, orders, rulings, approvals, interpretations, administrative practices, and/or enforcement policies of the United States Department of Labor and the Colorado Department of Labor and Employment.

### Ninth Separate Defense

At no time were the actions of Defendants willful; thus, if applicable at all, the FLSA statute of limitations is two years.

### Tenth Separate Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, estoppel, laches, and/or waiver.

### Eleventh Separate Defense

Defendants properly account and pay for all hours worked and all overtime compensation due.

### Twelfth Separate Defense

Defendants properly paid Plaintiff and all similarly-situated employees.

### Thirteenth Separate Defense

Some of all of Plaintiff's claims lack substantial justification, entitling Defendants to an award of reasonable attorney's fees.

48678918.4

## XV. COUNTERCLAIMS BY DEFENDANTS
## ELLA BLISS BEAUTY BAR LLC; ELLA BLISS BEAUTY BAR-2, LLC; AND
## ELLA BLISS BEAUTY BAR-3, LLC

1.      This Court has jurisdiction over Defendants' counterclaims pursuant to 28 U.S.C.

§ 1367.

2.      A normal workweek for all full-time regular employees of Ella Bliss is 30 hours

or four shifts for massage/Esti therapists per week.

3.      An employee's working hours parallel his or her booking hours, not actual

appointment bookings.

4.      Ella Bliss uses Booker, an industry-focused point-of-sale (POS) and backend

scheduling system, to track employee hours.

5.      For each scheduled shift, the Booker system records the employee's 30-minute

lunch break and any periods of time during which the employee was considered "on-call."

6.      Ella Bliss staff have full access to the Booker system through a computer located

in the break room of each Ella Bliss location.

7.      Time worked includes all the time employees spend on the job performing

assigned duties.

8.      Ella Bliss keeps an accurate record of employees' time worked in order to

calculate pay and benefits accurately.

9.      All Ella Bliss employees are required to clock in and out for their scheduled

shifts, including clocking out for lunch.

10.     Employees are required to clock in 15 minutes before their scheduled shift in

order to prepare for the day.

48678918.4

11.     Employees are required to clock out when they take a lunch break or otherwise leave the Ella Bliss premises.

12.     Each Ella Bliss employee is responsible for accurately recording his or her time worked.

13.     Ella Bliss policy explicitly prohibits employees from falsifying time records and hours worked.

14.     Altering, falsifying tampering with time records, or recording time on another employee's time record are violations of Ella Bliss policy and result in termination of employment.

15.     Ella Bliss encourages any employee who believes a discrepancy exists in his or her paycheck to contact his or her manager immediately to address the situation.

16.     Plaintiff Lisa Miles never raised any of the complaints made in the Complaint prior to the end of her employment with Ella Bliss.

17.     Upon information and belief, both before and after the filing of the lawsuit, Plaintiff Lisa Miles encouraged employees and members of Ella Bliss to sever their ties with Ella Bliss.

18.     Upon information and belief, employees and members did in fact sever their ties with Ella Bliss as a result of Ms. Miles' encouragement that they do so.

### First Counterclaim:  Deceit Based on Fraud

19.     Defendants incorporate the allegations in paragraphs XV.1-13 as though fully set forth herein.

48678918.4

20.     Plaintiff Lisa Miles was familiar with the Booker system and the process for clocking in and out.

21.     Plaintiff Lisa Miles knew she was required to clock out for her 30-minute lunch break.

22.     In June 2018, Ella Bliss became aware of employees being clocked in but not being present at the store.

23.     After investigation, Ella Bliss discovered at least 70 occasions between March 2016 and August 2018 when Plaintiff Lisa Miles was clocked in when she was not working, resulting in over 46 hours of time for which she was paid but did not work.

24.     Plaintiff Lisa Miles' failure to clock out when she was not working constitutes knowing, material, and false representations to Ella Bliss about her hours worked.

25.     Plaintiff Lisa Miles' material, false representations as to hours worked resulted in her being paid for hours she did not work.

26.     Plaintiff Lisa Miles made the false representations as to her hours worked with the intent that Defendants would rely on the misrepresentations and pay her for the non-working hours.

27.     Defendants relied on the representations, and such reliance was justified, as Ella Bliss employees are responsible for accurately recording their time worked.

28.     Defendants' reliance on Plaintiff's misrepresentations caused injuries, damages, and losses to Defendants.

29.     Defendants seek all damages available by law, including but not limited to actual and consequential damages.

48678918.4

## Second Counterclaim:  Rights in Stolen Property

30.     Defendants incorporate the allegations in paragraphs XV.1-26 as though fully set forth herein.

31.     Plaintiff Lisa Miles knowingly obtained, retained, and/or exercised control over items of value belonging to Defendants without authorization and by deception, namely by receiving payment for hours she did not work.

32.     Plaintiff Lisa Miles intended to deprive Defendants permanently of the use or benefit of the thing of value.

33.     Plaintiff and other putative class members knowingly used the thing of value in such a manner as to deprive Defendants permanently of its use or benefit.

34.     Defendants seek $200 or three times amount of actual damages plus costs and reasonable attorney's fees.

## Third Counterclaim:  Intentional Interference with Prospective Business Advantage

35.     Defendants incorporate the allegations in paragraphs XV.1-32 as though fully set forth herein.

36.     Defendants had ongoing relationships with employees and members.

37.     Defendants also sought to hire new employees.

38.     Plaintiff knew or reasonably should have known about these actual and prospective business relationships.

39.     Plaintiff intentionally and improperly induced or caused third persons not to enter into or continue business relations with Defendants, including encouraging employees to leave their employment with Ella Bliss and encouraging members to cancel their memberships.

48678918.4

40.     Plaintiff intentionally and improperly prevented Defendants from acquiring or continuing business relations with employees and members.

41.     Defendants suffered damages.

42.     Defendants are entitled to recover all damages available by law, including but not limited to economic and non-economic damages.

## XVI.   Prayer for Relief

43.     Defendants respectfully request an Order from the Court:

a.   Granting judgment in favor of Defendants and against Plaintiff on the counterclaims outlined in paragraphs XV.1-42 above;

b.   Awarding Defendants all damages to which they are entitled, including but not limited to actual and consequential damages;

c.   Awarding Defendants $200 or treble damages, whichever is greater, under Colorado's Rights in Stolen Property Statute;

d.   Awarding Defendants their reasonable attorney's fees;

e.   Awarding Defendants prejudgment and postjudgment interest to the extent allowed by law; and

f.   Granting such other relief as the Court deems just and proper.

Dated this 23rd day of July, 2018.

Respectfully submitted,

*s/ Brooke A. Colaizzi*
Brooke A. Colaizzi
Raymond M. Deeny
Heather F. Vickles
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 297-2900
Facsimile:  (303) 298-0940
bcolaizzi@shermanhoward.com
rdeeny@shermanhoward.com
hvickles@shermanhoward.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2018, a true and correct copy of the foregoing **ANSWER AND COUNTERCLAIMS** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mari Newman, Esq.                          Alexander Hood, Esq.
Liana Orshan, Esq.                         David Seligman, Esq.
KILLMER, LANE &NEWMAN, LLP                 TOWARDS JUSTICE
1543 Champa St., Suite 400                 1410 High St., Suite 300
Denver, CO 80202                           Denver, CO 80218
mnewman@kln-law.com                        alex@towardsjustice.org
lorshan@kln-law.com                        david@towardsjustice.org

*Attorneys for Plaintiffs*                 *Attorneys for Plaintiffs*

*s/Laura Lewis*