**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 18-cv-1212-PAB-MEH

LISA MILES A.K.A ELISA MARIE MILES; and those similarly situated,

      Plaintiffs/Counter Defendants,

v.

BKP INC.;
ELLA BLISS BEAUTY BAR LLC;
ELLA BLISS BEAUTY BAR - 2, LLC;
ELLA BLISS BEAUTY BAR - 3, LLC;
BROOKE VANHAVERMAAT;
KELLY HUELSING; AND
PETER KOCLANES,

      Defendants/Counter Claimants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

A Scheduling Conference was held before Magistrate Judge Michael E. Hegarty on

August 28, 2018 at 10:15 a.m. in Courtroom A-501, Alfred A. Arraj United States Courthouse in

Denver, Colorado. In attendance were:

| | |
|---|---|
| Mari Newman | Raymond M. Deeny |
| Liana Orshan | Heather Fox Vickles |
| Tania Valdez | Sherman & Howard |
| Killmer, Lane & Newman, LLP | 633 Seventeenth Street, Suite 3000 |
| 1543 Champa Street, Suite 400 | Denver, Colorado 80202 |
| Denver, Colorado 80202 | |
| Tel: (303) 571-1000 | 90 South Cascade Avenue, Suite 1500 |
| Fax: (303) 571-1001 | Colorado Springs, Colorado 80903 |
| mnewman@kln-law.com | Tel: (303) 297-2900 |
| lorshan@kln-law.com | |
| tvaldez@kln-law.com | rdeeny@shermanhoward.com |
| | hvickles@shermanhoward.com |

1

Alex Hood                                        *Counsel for Defendants*
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
Tel: (720) 441-2236
Fax: (303) 957-2289
alex@towardsjustice.org

*Counsel for Plaintiffs*

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and

supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under state

law. Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in Colorado or

are registered to do business in Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**Plaintiffs**:

I. Ella Bliss

Brooke Vanhavermaat, her sister, Kelly Huelsing, and their father, Peter Koclanes

formed BKP, Inc. in 2013. Defendant Vanhavermaat is the President of BKP, and Defendant

Huelsing is the Vice President. BKP is the parent company of Ella Bliss Beauty Bar LLC ("Ella

Bliss 1"), Ella Bliss Beauty Bar -2, LLC ("Ella Bliss 2"), and Ella Bliss Beauty Bar – 3, LLC

("Ella Bliss 3") (collectively, the "Entity Defendants"). Ella Bliss 1 is located in Greenwood

Village, Colorado; Ella Bliss 2 is in Denver, Colorado; and Ella Bliss 3 is in Highlands Ranch,

Colorado. Collectively herein, they are referred to as "Defendants."

Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3 (collectively "Ella Bliss") provide services like those typically offered at a day spa or salon, including massages, manicures and pedicures, blowouts, facials, waxing, eyelash extensions, and makeup consultations and application. Customers at Ella Bliss pay a set price for each service they purchase. For example, Ella Bliss charges $78 for a manicure/pedicure combination. However, customers can pay a monthly membership fee and receive membership benefits that include a discounted rate on services.

Ella Bliss employs various "Service Technicians" to perform the services that it offers. Service Technicians include nail technicians, cosmetologists, estheticians, and massage therapists. There are approximately twenty-five (25) to thirty-five (35) Service Technicians employed by each Ella Bliss location at any given time. All Service Technicians employed by Ella Bliss were subject to the same employment policies.

II.   Plaintiff's Employment by Defendants

Defendants hired the named Plaintiff, Lisa Miles, to work as a nail technician in March 2016. Ms. Miles worked primarily at Ella Bliss 2 in Denver, but she also worked intermittently at Ella Bliss 1 in Greenwood Village for most of her employment.

Ms. Miles and Ella Bliss entered into a contract in which Ella Bliss agreed that it would pay her $17 per hour, plus 5% commissions on services. In approximately fall 2016, she received a raise to $18 per hour, and during that time, began working as a "lead" nail technician. Leads were responsible for training the other Service Technicians and "setting a good example."  Ms. Miles worked as a lead nail technician until approximately July 2017, when she stepped down from her position as lead.

During her employment, Ms. Miles consistently complained about Ella Bliss's pay practices. She also complained about other practices at Ella Bliss, including that employees made

3

sex and race-based comments that were inappropriate and that Ella Bliss retained nail technicians who were not competent at their job.

In September 2017, Ella Bliss terminated Ms. Miles' employment. Defendant Koclanes informed her of the termination. When she asked him why Ella Bliss was firing her, he refused to provide a reason.

III.   Defendants Jointly Employed Plaintiff and Those Similarly Situated

The individual Defendants (Vanhavermaat, Koclanes, and Huelsing), were each very involved in setting policies for Ella Bliss and managing and supervising the day-to-day operations at all Ella Bliss locations. Defendant Vanhavermaat, either individually or in consultation with Defendants Koclanes and Huelsing, set all policies, rules, and standards for Ella Bliss Service Technicians. Defendants Vanhavermaat, Koclanes, and Huelsing, as well as the store managers under their direction, implemented these policies, rules, and standards.

In addition to setting the rules for Service Technicians, Defendants Vanhavermaat, Koclanes, and Huelsing controlled Service Technicians' conditions of employment by personally supervising their work. The individual Defendants were often present at each of the three stores, and usually each Defendant came by each store at least once a week to supervise.

Defendants Vanhavermaat, Koclanes, and Huelsing also ran quarterly, mandatory meetings for all Ella Bliss employees, including Service Technicians. Defendant Vanhavermaat led the meetings the majority of the time, but Defendants Koclanes and Huelsing also spoke at the meetings. During the meetings, Defendants Vanhavermaat, Koclanes, and Huelsing communicated to the employees company rules and policies, including those governing Service Technicians' work and compensation. Furthermore, Defendants Vanhavermaat, Koclanes, and Huelsing made decisions regarding the hiring and firing of the Service Technicians.

Along with the individual Defendants, the entity Defendants—BKP, Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3—jointly employed Plaintiff and those similarly situated. The Entity Defendants jointly exercised substantial control over the terms and conditions of the work of Plaintiff and other Service Technicians. The Entity Defendants also co-determined the policies, procedures, and rules, including those relating to compensation, benefits, and hours, governing all Service Technicians at all three Ella Bliss stores.

Through the individual Defendants, who controlled the Entity Defendants, the Entity Defendants jointly had the ability to fire and hire Service Technicians and decide when and at what store a Service Technician would work.

While most of Plaintiff's paychecks were issued by Ella Bliss 2, BKP occasionally issued Plaintiff's paychecks.

IV.  Ella Bliss's Illegal Pay Practices

Policies were companywide at all Ella Bliss stores and applied to all Service Technicians and made clear that its wage policies applied to all Service Technicians as follows: Ella Bliss provided each Service Technician a form offer letter—which, when accepted by the Service Technician, became a contract—and a "Customer Service Contract" setting forth Ella Bliss's policies. These policies provided, as discussed more fully below: one, Service Technicians had to arrive fifteen minutes prior to the start time of each scheduled shift; two, Ella Bliss did not pay its Service Technicians for downtime; and three, Ella Bliss would pay a percentage commission for each service the Technician performed.

In addition to the contract, Ella Bliss communicated rules and polices that governed Service Technicians through its Handbook and via group emails to all Service Technicians. The Handbook and emails discussed, among other things, Ella Bliss's policy regarding downtime.

Ella Bliss also held mandatory companywide meetings, at least quarterly, at which it discussed its policies, including those regarding downtime and commissions.

Ella Bliss explicitly and willfully maintained policies that violate state and federal wage and hour laws in at least the following ways:

A. Failure to Pay for Downtime

After the first 60 days of employment, Ella Bliss does not compensate its Service Technicians for downtime. Rather, Ella Bliss only pays for "service time," meaning the time when the Technicians are serving customers (e.g., when nail technicians are doing a manicure or pedicure). Ella Bliss's contract with Plaintiff states that Plaintiff would be paid $17/hour per "service hour" but she would not receive any downtime pay after the first 60 days of employment. The contract provided that Ella Bliss would pay Plaintiff $5.50 /hour for downtime for her first 60 days.

Although Ella Bliss paid other Service Technicians and even other nail technicians a different hourly rate, the policies to which Plaintiff was subject applied to every Service Technician at all three locations. The policies provided that the only Service Technicians paid for downtime (after the first 60 days of employment) were assistant lead technicians and lead technicians. Ella Bliss's policy during Plaintiff's employment was to pay $5.50/hour to assistant lead technicians for downtime and $6.50/hour to lead technicians for downtime. However, the rate was negotiable; for instance, Plaintiff earned $7/hour for downtime when she worked as a lead technician.

During downtime, Ella Bliss prohibited its Service Technicians from leaving the premises of the store if they had less than an hour between scheduled services. If a Service Technician had more than an hour between scheduled services, Ella Bliss sometimes allowed the Technicians to

leave the premises, but only with explicit permission from the manager. If allowed to leave, Ella

Bliss expected Service Technicians to be on-call and able to return within 15 minutes in order to

serve walk-in customers who had not booked services in advance.

Ella Bliss communicated through group emails to all Service Technicians its

requirements that Service Technicians remain on the premises if they had less than an hour

between scheduled services and remain on-call if they had more than one hour between

scheduled services. The emails reminded the Technicians that leaving the premises during

downtime was a "privilege" not a "right."

During downtime, Ella Bliss expected its Service Technicians to perform tasks for the

benefit of Ella Bliss, such as cleaning and folding towels. Indeed, Ella Bliss explicitly required

Plaintiff to agree in her "Customer Service Contract" that she would "participate in downtime

activities when not in service." Ella Bliss did not employ a janitorial service and instead relied on

its Service Technicians to do all the cleaning. If the Service Technicians did not do a good

enough job cleaning, their supervisors, including Defendants Vanhavermaat and Huelsing and

especially Defendant Koclanes, would reprimand them. Ella Bliss also held companywide

meetings at which managers, including Defendant Vanhavermaat, would tell the Service

Technicians that they were not doing a good enough job cleaning on their downtime and that

they needed to do better.

   B.   <u>Failure to Pay for Pre- and Post-Shift Work</u>

Pursuant to Plaintiff's "Customer Service Contract," Ella Bliss required her to "arrive

fifteen minutes prior to [the] start time of [her] scheduled shift." Ella Bliss also required Plaintiff

to "participate in beginning/end of shift duties" and "check out with Concierge, Lead, or

Management before leaving for the day." Ella Bliss also required its Service Technicians to stay

after the end of their last service to do chores. It typically took the Service Technicians at least thirty minutes at the end of each shift to finish their chores.

Service Technicians' chores included cleaning their service area and implements. Additionally, each type of Service Technician had technician specific chores. For example, nail technicians had to fold and put away towels, restock their stations, and clean pedicure bowls. Service Technicians also had to do general cleaning, like cleaning the bathroom and kitchen. Ella Bliss expected each Technician to do two to four chores each shift, including at least one technician specific chore and one general cleaning chore. Ella Bliss did not pay its Service Technicians for their pre- and post-shift work.

C. Withholding Tips to Compel Work

Ella Bliss required the Service Technicians to check out with a manager before they could leave at the end of their shift. The managers kept the Service Technicians' cash tips in a lock box behind the front desk. In order for a Service Technician to collect her tips from the shift, Ella Bliss required her to check out with a manager.

Ella Bliss ensured that the Service Technicians did their chores by withholding the Technicians' tips until they finished their chores. The managers withheld a Service Technician's tips until the manager verified that the Service Technician had completed her chores. If the Service Technician did not check out with a manager or did not do her chores, Ella Bliss kept her tips, sometimes for up to a week at a time, until she did her chores at the end of another shift.

D. Failure to Pay Commissions

In Plaintiff's contract with Ella Bliss, Ella Bliss agreed to pay her "5% commission on services." The plain language of the contract provision, and Plaintiff's understanding of the provision, meant that Ella Bliss would pay Plaintiff 5% of the service price for each service she

8

performed. For example, the one-hour Signature Nail Service—a manicure and pedicure—cost

the customer $78. Plaintiffs thus should have received a $3.90 commission on such a service.

Regular practice in the industry is to pay nail technicians and other similar service providers a

commission calculated in this manner: based on the service rate—the cost to the customer—of

the service performed.

However, despite what was stated in Ella Bliss's Service Technicians' contracts and

despite the industry standard, Ella Bliss paid its Service Technicians commissions based on their

hourly rate. So, if Plaintiff worked for one hour to complete a Signature Nail Service, Ella Bliss

paid her only $.85 in commission—5% of her hourly rate of $17—instead of the $3.90 to which

she was entitled.

Defendants' failure to pay commissions on the service rate applied to all Service

Technicians. To ensure that there was no confusion, near when Plaintiff first started working for

Ella Bliss, Defendant Vanhavermaat held a mandatory companywide meeting at which she

reiterated that (contrary to its written contract) Ella Bliss paid commissions on each Service

Technician's rate (their hourly pay), not the cost of the service to the customer.

V.   The Illegal Pay Policies and Practices Caused Unpaid Overtime

The off-the-clock time resulting from the illegal pay policies described above, including

Ella Bliss's failure to pay for downtime and pre- and post-shift work, led to Plaintiff and other

Service Technicians not being paid for all hours worked, which included unpaid overtime for

hours worked in excess of 40 in a workweek. For example, if Plaintiff worked fifty hours a week

including downtime and pre- and post-shift work, Ella Bliss paid her only for twenty to thirty-

five hours: the amount of time when she was actually doing services.

On average, Plaintiff worked twenty to thirty-five hours per week in service time, but she regularly worked more than forty hours a week including downtime and pre- and post-shift-work time. Thus, although Service Technicians including Plaintiff often worked over forty hours a week, because Ella Bliss paid them only for service time and not for downtime and pre- and post-shift work, Ella Bliss never paid them any overtime pay.

Ella Bliss did not pay Plaintiff overtime pay in almost every workweek during her employment with Ella Bliss. For example, during the work week of Sunday, May 29, 2016, Ella Bliss compensated Plaintiff for approximately thirty hours. Because of the illegal pay policies, she was not compensated for at least 10 hours of straight time and at least 10 to 15 hours of overtime. As another example, during the work week of Sunday, June 5, 2016, Ella Bliss compensated Plaintiff for approximately thirty hours. Because of the illegal pay policies, she was not compensated for at least 10 hours of straight time and at least 10 to 15 hours of overtime.

<u>RULE 23 CLASS ALLEGATIONS</u>

Plaintiff alleges all claims, other than the FLSA claims, as a Fed R. Civ. P. 23 class action on her own behalf and on behalf of classes for which she seeks certification. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the "Rule 23 Class" as follows:

**ALL CURRENT AND FORMER SERVICE TECHNICIANS WHO WORKED AT ANY OF ELLA BLISS BEAUTY BAR'S THREE LOCATIONS**

The class is so numerous that joinder of all potential class members is impracticable. Plaintiff does not know the exact size of the class since that information is within the control of Defendants. However, Plaintiff estimates that, based on the size of Ella Bliss's operations, the

class is composed of well over 80 persons. The exact size of the class will be easily ascertainable from Defendants' records.

There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants' pay practices and Defendants' failure to pay employees all they are legally owed.

The class claims asserted by Plaintiff are typical of the claims of all the potential class members because she experienced the same or similar working conditions and pay practices as Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage, hourly workers like the class members here, who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system pro se, and whose small claims make it difficult to retain legal representation if they do seek it.

Plaintiff will fairly and adequately protect and represent the interests of the class. Plaintiff was Defendants' employee and was a victim of the same violations of law as the other class members, including numerous violations of federal and state wage and hour laws.    Plaintiff is represented by counsel experienced in litigation on behalf of low-wage workers and in wage and hour class actions. The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In

addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent federal and state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action, and is unaware of any pending litigation commenced by members of the class concerning the instant controversy.

It is desirable to concentrate this litigation in this forum because all parties are domiciled in this jurisdiction or are registered to do business in this jurisdiction.

This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain. *See* 29 C.F.R. § 516, *et seq.*

<u>29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS</u>

Plaintiff brings her FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all other similarly situated current and former employees of Defendants. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the "216(b) Class" as follows:

**ALL CURRENT AND FORMER SERVICE TECHNICIANS WHO WORKED AT ANY OF ELLA BLISS BEAUTY BAR'S THREE LOCATIONS**

All potential FLSA class members are similarly situated because, among other things, they all worked as Service Technicians for Defendants. Moreover, all members of the class

suffered from the same policies of Defendants resulting in unpaid overtime in overtime

workweeks, including:

     a.     Failure to account for "downtime" work in determining overtime compensation.

     b.     Failure to account for pre- and post-shift work in determining overtime compensation.

## VI.  Defendants Retaliated Against Ms. Miles and the other Plaintiffs for Asserting Their Legal Rights

In response to the filing of the lawsuit, Defendants retaliated against Ms. Miles and the

class by asserting baseless counterclaims designed to both punish Ms. Miles for asserting her

legal rights (and the rights of her coworkers) under the FLSA and CWCA, and to intimidate and

deter other workers from participating in the litigation either as witnesses or as opt-in plaintiffs.

But for the filing of the lawsuit, Defendants would not have brought these legal claims against

Ms. Miles and the class. Indeed, Defendants never once informed Ms. Miles of the asserted bases

for their retaliatory counterclaims at any time during her employment, or after her termination,

until after Ms. Miles filed this lawsuit.

Plaintiff denies that she ever knowingly clocked in for work when she was not entitled to

be paid for her time. Plaintiff denies that she encouraged Ella Bliss employees or members to sever

their relationships with Ella Bliss. Defendants' assertion of counterclaims alleging otherwise

constitutes retaliation against Plaintiff for asserting her and her co-workers' legal rights under the

Fair Labor Standards Act and the Colorado Wage Claim Act.

Moreover, this Court lacks subject matter jurisdiction over Defendants' counterclaims, in

whole or in part. The counterclaims fail to state a claim upon which relief can be granted, and they

are without factual support. Defendants' counterclaims are barred, in whole or in part, because

they infringe on Plaintiff's First Amendment right to petition the government for a redress of

grievances. Defendants' counterclaims are barred, in whole or in part, because they were brought in retaliation for Plaintiff's assertion of her and her co-workers' legal rights, including but not limited to the Fair Labor Standards Act. Defendants' counterclaims are barred, in whole or in part because they were brought in relation for her and her co-workers' concerted activity. Defendants' counterclaims are barred, in whole or in part, because they constitute abuse of the legal process. Defendants' counterclaims are barred, in whole or in part, because Defendants made false factual representations or otherwise failed to disclose material information that should have been disclosed, and Plaintiff(s) relied upon Defendants' representation in agreeing to the contract. Defendants' counterclaims are barred, in whole or in part, because Defendants failed to sufficiently plead deceit based on fraud with particularity. Defendants' counterclaims are barred, in whole or in part, by the doctrine of unclean hands, estoppel, laches, and/or waiver. Defendants have suffered no injury nor is there a likelihood of injury. Defendants have suffered no damages. Defendants' counterclaims are barred, in whole or in part, by the Statutes of Limitations. Defendants' counterclaims are barred, in whole or in part, by Defendants' failure to mitigate damages, if any. Plaintiff at all times acted in good faith and without knowledge or willful intent to violate any federal, state, or local law, administrative guidance, or Defendants' company policy. Some of all of Defendants' claims lack substantial justification, entitling Plaintiff to award of reasonable attorney's fees and costs. Ms. Miles and the class have suffered additional injury and damages as a result of Defendants' retaliatory counterclaims.

Plaintiff, on behalf of herself and other similarly situated,

 brings the following claims against Defendants: (1) Unpaid Overtime Under the Fair Labor Standards Act ("FLSA"); (2) Unpaid Overtime Under Colorado Law Colo. Rev. Stat. §§ 8-4-101, *et. seq.*, 8-6-118; Colorado Wage Order; (3) Unpaid Straight Time Under the Colorado Wage

Claim Act ("CWCA"); (4) Unpaid Commissions Under the CWCA; (5) Civil Theft For Withholding Tips To Compel Labor COLO. REV. STAT. §§ 18-4-401, *et seq.* Plaintiffs has filed a Motion to Amend her Complaint to include the following additional claims against Defendants for retaliation: (6) retaliation under the FLSA; (7) retaliation under the CWCA; and (8) negligence *per se* based on Colo. Rev. Stat. § 8-4-120. The additional claims are based on Defendants' filing counterclaims against Plaintiff because Plaintiff filed this suit against Defendants.

### **Defendants**:

Ella Bliss Beauty Bar is a woman-owned company dedicated to providing women with the opportunity to make a good living for themselves and their families. Ella Bliss prides itself on offering a compensation structure that exceeds that of its competitors in the industry and providing a work environment based on integrity and customer service. Ella Bliss employs approximately 20-25 technicians in each of its three locations.

Plaintiff Lisa Miles worked as a nail technician from March 19, 2016 to September 5, 2017. Ella Bliss fully informed Ms. Miles of the reasons for her termination. Plaintiff did not raise any concerns or complaints about her compensation with Ella Bliss prior to her termination.

Ella Bliss's technicians are compensated in several ways. First, each technician is paid an hourly rate for the time she is performing a service. For example, Ms. Miles initially received $17 per service hour and later received $18 per service hour. Technicians also receive a 5% commission on their service hour pay. Although the language in Ella Bliss' offer letters regarding this service commission has changed over the years, the commission has always been paid as a percentage of the technician's hourly service rate. Some technicians also receive compensation for "downtime" when they are not performing a service. Most technicians receive downtime pay for the first 60 days of employment to give them the opportunity to ramp up their business. Some

technicians, primarily massage therapists, continue to receive downtime after 60 days.  Ms. Miles was paid $5.50 per hour for downtime.  Finally, technicians receive commission on products they sell.  Technicians keep all cash and credit card tips they earn, without pooling or deductions.

Technicians are asked to arrive 15 minutes before their scheduled shift to prepare for the shift and to perform other beginning-of-shift- or end-of-shift duties.  Technicians clock in and are paid for before- and after-shift activities.  Technicians with less than an hour between services are asked to remain on site but may engage in personal pursuits.  Technicians with more than an hour between services may clock out and leave the premises until they are scheduled for a service, which would be scheduled at least 30 minutes out.  Generally, technicians do not work many overtime hours.  However, they are properly compensated for overtime hours when they occur.

Cash tips are placed in an envelope labeled with the appropriate technician's name and kept in a safe at the front of each Ella Bliss location for security.  A technician need only ask a manager, shift supervisor or concierge to retrieve the tips at the end of the shift.  Tips are not withheld for any reason.

Defendants raise numerous defenses and counterclaims in this case.  Plaintiff cannot meet the requirements for sustaining either a collective action under the FLSA or a class action under Colorado law.  Her Complaint in whole or in part fails to state a claim upon which relief can be granted.  Plaintiff's claims and/or the claims of putative class members may be barred by the applicable statute of limitations.  Although the individual Defendants participate in the day-to-day operations of Ella Bliss, their activities do not meet the factors for establishing individual liability for any potential FLSA violations.  Some of the activities Plaintiff alleges are compensable are not compensable under the FLSA or Colorado state law.  At all times, Defendants acted in good faith with reasonable grounds to believe that their actions comported with both federal and state law by

means of reliance on advice of counsel at the time and/or written administrative regulations, orders, rulings, approvals, interpretations, administrative practices, and/or enforcement policies of the U.S. Department of Labor and the Colorado Department of Labor and Employment. If any legal violations occurred, they were not willful. Plaintiff's and/or putative class members' claims may be barred by the doctrine of unclean hands, estoppel, waiver, or laches. Some or all of Plaintiff's claims lack substantial justification, entitling Defendants to reasonable attorney's fees. Defendants will refine the applicable separate defenses as discovery progresses in this case.

Defendants also bring counterclaims against Plaintiff. Ella Bliss discovered nearly 70 occasions when Plaintiff was clocked in but not present at an Ella Bliss location. Such conduct amounts to time theft and fraud. Plaintiff also took steps to encourage Ella Bliss employees and members to sever their relationships with Ella Bliss, which constitutes intentional interference with contractual relations and prospective business advantage. Ella Bliss has suffered damages as a result of Plaintiff's conduct. Defendants disclosed the likelihood of counterclaims and the grounds therefore to Plaintiff before Defendants filed the counterclaims.

### 4. UNDISPUTED FACTS

a.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under state law.

b.      Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in Colorado or are registered to do business in Colorado.

c.      At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR LLC (hereinafter "Ella Bliss 1") was a Colorado limited liability company with its principal place of business in the District of Colorado.

d.      At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR - 2, LLC (hereinafter "Ella Bliss 2") was a Colorado limited liability company with its principal place of business in the District of Colorado.

e.      At all times material to the allegations of the complaint, Defendant ELLA BLISS BEAUTY BAR - 3, LLC (hereinafter "Ella Bliss 3") was a Colorado limited liability company with its principal place of business in the District of Colorado.

f.      At all times material to the allegations of the complaint, Defendant Vanhavermaat was a natural person residing and domiciled in the District of Colorado.

g.      At all times material to the allegations of the complaint, Defendant Koclanes was a natural person residing and domiciled in the District of Colorado.

h.      At all times material to the allegations of the complaint, Defendant Huelsing was a natural person residing and domiciled in the District of Colorado.

i.      Brooke Vanhavermaat, her sister, Kelly Huelsing, and their father, Peter Koclanes formed BKP in 2013. Defendant Vanhavermaat is the President of BKP, and Defendant Huelsing is the Vice President.

j.      BKP is the parent company of Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3. Ella Bliss 1 is located in Greenwood Village, Colorado; Ella Bliss 2 is in Denver, Colorado; and Ella Bliss 3 is in Highlands Ranch, Colorado.

k.      Ella Bliss 1, Ella Bliss 2, and Ella Bliss 3 (collectively "Ella Bliss") provide services like those typically offered at a day spa or salon, including massages, manicures and pedicures, blowouts, facials, waxing, eyelash extensions, and makeup consultations and application.

l.      Ella Bliss employs various "Service Technicians" to perform the services that it offers. Service Technicians include nail technicians, cosmetologists, estheticians, and massage therapists.

m.      Plaintiff worked primarily at Ella Bliss 2 in Denver, but she also worked intermittently at Ella Bliss 1 in Greenwood Village for most of her employment.

n.      Plaintiff worked as a lead nail technician until approximately July 2017, when she stepped down from her position as lead.

o.      Ella Bliss Beauty Bar has a Handbook and at times uses email to communicate with employees about employee matters, including rules and policies.

p.      Defendants Vanhavermaat, Koclanes, and Huelsing made decisions regarding the hiring and firing of the Service Technicians.

q.      Defendants Vanhavermaat, Koclanes, and Huelsing also ran quarterly, mandatory meetings for all Ella Bliss employees, including Service Technicians. Defendant Vanhavermaat led the meetings the majority of the time, but Defendants Koclanes and Huelsing also spoke at the meetings. During the meetings, Defendants Vanhavermaat, Koclanes, and Huelsing communicated to the employees company rules and policies, including those governing Service Technicians' work and compensation.

r.      Technicians were asked to participate in downtime activities when not in service.

s.      Ella Bliss required its Service Technicians to arrive 15 minutes early in order to prepare and set up for their first service.

t.      Service Technicians were asked to complete certain end-of-shift tasks before clocking out.

## 5. COMPUTATION OF DAMAGES

Plaintiffs:  Plaintiffs cannot yet estimate the damages because the hours-worked and wages-paid records required to calculate Plaintiff's and the Collective/Class's damages are in Defendants' control and have not yet been produced to Plaintiff.

Plaintiff claims the following categories of damages on behalf of herself and the Class/Collective:

      a.   actual damages and liquidated damages under the FLSA and CWCA;

      b.   damages under Colorado's Rights in Stolen Property Statute, Colo. Rev. Stat. § 18-4-405;

      c.   awarding Plaintiff Miles and those similarly situated economic, compensatory, and consequential damages, including damages for emotional distress, on all claims allowed by law in an amount to be determined at trial;

      d.   awarding Plaintiff Miles and those similarly situated punitive damages on all claims allowed by law and in an amount to be determined at trial;

      e.   costs and attorneys' fees;

      f.   pre- and post-judgment interest when allowable by law; and

      g.   any additional relief the court deems proper, including equitable relief.

Defendants:  Defendants seek actual and consequential damages, treble damages, attorney's fees, pre- and post-judgment interest, and any additional relief the court deems proper from Plaintiff resulting from Plaintiff receiving compensation for hours not worked and for interference with Ella Bliss's employee and customer relationships.  Based on current information, Defendants estimate damages to be $235,000, exclusive of attorney's fees.  This estimate is preliminary and could increase or decrease as discovery progresses.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

      a.      The Fed. R. Civ. P. 26(f) meeting was conducted via telephone conference between counsel on **August 7, 2018.**

    b.        Participants in the meeting were as follows:

        (1)        Mari Newman and Liana Orshan of KILLMER, LANE & NEWMAN, LLP, and David Seligman and Alex Hood of TOWARDS JUSTICE (counsel for Plaintiff);

        (2)        Brooke Colaizzi of SHERMAN & HOWARD, LLC (counsel for Defendants);

    c.        Rule 26(a)(1) disclosures were made on or before **August 24, 2018.**

    d.        The parties have not agreed to conduct informal discovery.  Defendants have provided Plaintiff with some informal discovery.  The parties will continue to evaluate whether additional informal discovery is appropriate as the case proceeds. The parties agree to take all reasonable steps to reduce discovery and reduce costs.

    e.        The parties anticipate that their claims or defenses will involve the discovery of some electronically stored information.  To the extent that discovery or disclosures involve information or records in electronic form, the Parties will take steps to preserve that information. The Parties agree that, to the extent feasible, the Parties will exchange information (whether in paper or electronic form) in PDF format.

    f.        The parties have had preliminary discussions regarding the possibilities for a prompt settlement or resolution of the case by alternate dispute resolution, and will report the result of any such meeting, and any similar future meeting, to the magistrate judge within 14 days of the meeting.

## 7. CONSENT

The Parties <u>do not</u> consent to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. 10.

## 8. DISCOVERY LIMITATIONS

a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules: Plaintiff may serve a total of 20 Interrogatories on each of the Entity Defendants, and 20 Interrogatories on each Individual Defendant. Defendants collectively may serve a total of 25 Interrogatories on each named Plaintiff.

Plaintiffs will oppose any attempt by Defendants to depose or serve interrogatories on some or all class/collective action members should such requests be geared toward deterring opt-in participation in the action or be unduly burdensome.  Defendants reserve the right to conduct opt-in and class discovery as proportionate to the needs of the case.

b.      Each side shall be limited to 10 depositions, in addition to named parties and experts.   Following Rule 23 class certification, if any, and closure of the FLSA opt-in period, if any, the parties will confer with each other and with the Court as needed to determine the appropriate scope of class and opt-in discovery.

Limitations which any party proposed on the length of depositions: The Parties do not propose any modifications to the limitations on the length of depositions.  A deposition is limited to one day of seven hours as provided in Fed. R. Civ. P. 30(d)(2).

c.      Limitations which any party proposed on the number of requests for production and/or requests for admission:

Plaintiff may serve 20 requests for production of documents and 20 requests for admission to each Entity Defendant, and 20 requests for production of documents and 20 requests for admission to each Individual Defendant. Defendants may serve 25 Requests for Production of Documents and 25 Requests for Admissions on each named Plaintiff.  Plaintiffs will oppose any attempt by Defendants to serve requests for production and/or admission on some or all class/collective action members should such requests be geared toward deterring opt-in

participation in the action or be unduly burdensome.  Defendants reserve the right to conduct opt-in and class discovery as proportionate to the needs of the case.

       d.      Other Planning or Discovery Orders:  Before filing a motion for an order relating to a discovery dispute, the movant must request a conference with the Court by submitting an email, copied to all parties, to hegarty_chambers@cod.uscourts.gov.  *See* Fed. R. Civ. P. 16, cmt. 2015 Amendment.

## 9. CASE PLAN AND SCHEDULE

       a.      Deadline for Joinder of Parties and Amendment to Pleadings: **November 2, 2018,** excluding those parties to be joined pursuant to Plaintiff's [forthcoming] Motion to Proceed as a Collective Action and for class certification and any amendment Plaintiffs' pleadings to add a claim for exemplary damages pursuant to C.R.S. § 13-21-102.

       b.      Discovery to be completed by **April 15, 2019.** Should the Court grant Plaintiff's forthcoming Motion for Conditional Certification, Plaintiff proposes that the Court set a new scheduling conference and modify the scheduling order to accommodate class-wide merits discovery.

       c.      Dispositive Motions Deadline: **May 15, 2019.**

       d.      Expert Witness Disclosure:

       1.      (a) Plaintiff anticipates retaining an expert in the field of economic damages. Plaintiff may call experts in other areas as well.

       (b) Defendants:  At this time, Defendants anticipate designating only rebuttal experts but reserve the right to designate affirmative experts if needed.

       2.      Each side shall be limited to a total of 3 experts.

3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:  **At least 65 days before the close of discovery.**

4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:  **At least 35 days before the close of discovery.**

5.      Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

e.      Identification of Persons to be Deposed:[1]

   i.   Plaintiff will conduct depositions of Defendants Brooke Vanhavermaat, Kelly Huelsing, Peter Koclanes, and any managers or Rule 30(b)(6) representatives of BKP, Ella Bliss Beauty Bar, Ella Bliss Beauty Bar-2, Ella Bliss Beauty Bar-3, and other witnesses as identified during the discovery process.

   ii.  Defendants:  Defendants will depose Plaintiff Lisa Miles and any other individual who becomes a named Plaintiff.  Defendants also reserve the right to conduct class and opt-in discovery as set forth in this Scheduling Order.

f.      Deadline for Interrogatories: The last written interrogatories shall not be served upon any adverse party any later than 30 days before the discovery cut-off date.

g.      Deadline for Requests for Production of Documents and/or Admissions: The last written request for production of documents and/or request for admission shall not be served

---

[1] The Parties reserve the right to take additional depositions of persons identified in the Parties' disclosures and through the course of discovery.

upon any adverse party any later than 30 days before the discovery cut-off date.

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times:

_____

b.      A final pretrial conference will be held in this case on July 15, 2019 at 10:30

o'clock a.m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no

later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

The parties anticipate that the trial will take 5 days if the case is not certified as a class or

collective action and will take longer if the case is certified. The length of trial for a certified action

will depend on the number of employees who opt-in to the action.

It is stipulated that no party or witness shall bring or wear a gun to his or her deposition.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1D by submitting proof that a copy of the motion has been served upon the

moving attorney's client, all attorneys of record and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial procedures

or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with the D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a pro se party must file a

copy of a notice of change of his or her address or telephone number with the clerk of the magistrate

judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

### 13. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon showing of good cause.

DATED this 29th day of August 2018.

BY THE COURT:

  S/Michael E. Hegarty
U.S. Magistrate Judge Michael E. Hegarty

SCHEDULING ORDER REVIEWED:

*s/ Mari Newman*

Mari Newman
Liana Orshan
Tania Valdez
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
mnewman@kln-law.com
lorshan@kln-law.com
tvaldez@kln-law.com

Alex Hood
David Seligman
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
Tel: (720) 441-2236
Fax: (303) 957-2289
alex@towardsjustice.org
david@towardsjustice.org

*Counsel for Plaintiffs*

*s/ Brooke Colaizzi*

Raymond M. Deeny
Sherman & Howard
90 South Cascade Avenue, Suite 1500
Colorado Springs, Colorado 80903
Direct: (719) 448-4016
rdeeny@shermanhoward.com

Heather Fox Vickles
Brooke A. Colaizzi
Sherman & Howard
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Direct: (303) 299-8471
Facsimile: (303) 298-0940
bcolaizzi@shermanhoward.com
hvickles@shermanhoward.com

*Counsel for Defendants*

26