**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-cv-01212-PAB-MEH

LISA MILES aka ELISA MARIE MILES; and those similarly situated,

Plaintiffs,

v.

BKP INC.;
ELLA BLISS BEAUTY BAR LLC;
ELLA BLISS BEAUTY BAR-2, LLC;
ELLA BLISS BEAUTY BAR-3, LLC;
BROOKE VANHAVERMATT;
KELLY HUELSING; AND
PETER KOCLANES,

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION UNDER RULE 23(b)(3) AND APPOINTMENT OF
CLASS COUNSEL UNDER RULE 23(g) (Doc. #133)**

---

Defendants BKP Inc., Ella Bliss Beauty Bar LLC; Ella Bliss Beauty Bar-2, LLC; Ella Bliss Beauty Bar-3, LLC; Brooke Vanhavermaat; Kelly Huelsing; and Peter Koclanes (collectively "Defendants" or "Ella Bliss") hereby respond to Plaintiff's Motion for Class Certification Under Rule 23(b)(3) and Appointment of Class Counsel Under Rule 23(g) (Doc. #133) (hereafter "Motion for Class Certification"). For the reasons set forth below, Plaintiff Lisa Miles ("Plaintiff" or "Miles") failed to satisfy the prerequisites for class certification under Rule 23, and the Motion for Certification must be denied.

54431124.1

I.      INTRODUCTION.

Plaintiff's Motion for Class Certification focused on three alleged pay policies or practices used at Ella Bliss for compensation of its service technicians. First, each service technician had a "service rate," the rate at which Ella Bliss paid the technician for the time spent performing services for customers. (Doc. #133-17 at 28:8-13; 34:13-17.) For example, Plaintiff Miles had service rates of $17.00, $17.50, and $18.00 during her employment at Ella Bliss. (Doc. #133-12; Doc. #133-17 at 39:1-9.) Service technicians were sometimes given a separate rate at which they were paid for time when they were not performing services ("downtime rate"). (Doc. #133-17 at 29:8-13; Doc. #133-12.) The purposes of downtime rates were to supplement technicians' income while they built up to a full service schedule and to help compensate for upgrades that customers request during services. (Doc. #133-2 at 87:20-88:6; 100:25-104:21; 135:12-136:2.) Service technicians were, at all times, clocked in during "downtime." (Doc. #133-17 at 75:2-5; 88:14-18; 90:14-91:1; Doc. #133-2 at 118:16-119:19.)

Second, service technicians were compensated with 5 percent commission. (Doc. #133-2 at 87:9-88:6.) At all relevant times, Ella Bliss calculated and paid the 5 percent by calculating 5 percent of each technician's service pay (service rate multiplied by hours in service).[1] (Id.) The 5 percent commission component was identified in each service technician's offer letter. (*See, e.g.*, Doc. #133-6, 133-7, 133-12.) New or promoted service

---

[1] Plaintiff suggested that, in 2014, Ella Bliss calculated commissions differently. (Doc. #133 at pp. 7-8.). However, Vanhavermaat testified that despite initial confusion over the commission when Ella Bliss first opened, the commission was always paid on the service rate. (Doc. #133-2 at 87:9-88:15; 100:25-104:21.). Plaintiff has not produced any evidence that it was actually paid differently.

2

technicians received an offer letter with one of four slightly different descriptions of the commission: "5% commission on service hours, plus tips;" "5% commission on services, plus tips;" "5% commission, plus tips;" or "5% commission on the service rate, plus tips." (Doc. #133 at p. 6.) Plaintiff's offer letters contained the language "5% commission on services." (Doc. #133-12.)

Finally, service technicians often received tips from customers, most of which were paid as credit card tips. (Doc. #133-1 at 69:4-17; 77:2-5.) Credit card tips were automatically included in service technicians' paychecks, as they were tracked through Ella Bliss' bookkeeping system. (Doc. #133-2 at 55:22-56:4.) Customers could hand cash tips directly to a service technician. (Doc. #133-1 at 77:14-79:21; Doc. #133-2 at 56:5-58:9.) If a cash tip was given to the concierge or manager instead of directly to the service technician, the tip was placed in an envelope with the technician's name on it and kept in a safe at the front of the store. (Doc. #133-1 at 77:14-79:21; Doc. #133-2 at 56:5-58:9.) At the end of their shifts, technicians collected their tips and left. (Doc. #133-2 at 120:1-121:6) Plaintiff admitted that Ella Bliss never withheld her tips for any reason. (Doc. #133-17 at 95:18-20.)

Plaintiff alleged that Ella Bliss' service and downtime rate structure violates Colorado wage and hour law. (Doc. #114 ¶¶ 170-77; #133 at pp. 2-3.) She also asserted what amounts to a breach of contract claim with respect to Ella Bliss' formula for paying commission, arguing that it violates the terms of the service technicians' offer letters. (Doc. #114 ¶¶ 178-85; #133 at pp. 6-7.) As to service technician tips, Plaintiff alleged that Ella Bliss withheld tips until technicians performed end-of-shift work without pay and in doing so committed civil theft. (Doc. #114 ¶¶ 86-90; #133 at pp. 8-9.) Plaintiff seeks certification pursuant to

3

Rule 23 of the Federal Rules of Civil Procedure of a single class related to the downtime wage and hour claim with a six-year statute of limitations. (Doc. #133 at p. 9.) She also seeks certification of a second, single class encompassing both the commission and tip theft claims and with a three-year statute of limitations. (Id.)

Plaintiff Miles failed to satisfy one or more of the requirements for certification of the proposed classes, and the Motion for Class Certification must be denied.

## II.     ARGUMENT

### a.  **Class Certification Requirements.**

Plaintiff bears the strict burden of proving that this case is fit for class treatment. *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217-18 (10th Cir. 2013). Plaintiff must provide evidentiary proof that each of the proposed classes satisfies all the requirements of Rule 23(a) and at least one provision of Rule 23(b). Fed. R. Civ. P. 23; *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Rule 23(a) requires Plaintiff to demonstrate that (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of Plaintiff are typical of the claims or defenses of the class (typicality); and (4) Plaintiff will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). As Plaintiff seeks certification under Rule 23(b)(3), she also must demonstrate that (1) questions of law or fact common to class members predominate over any questions affecting only individual members (predominance); and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The predominance requirement of Rule 23(b)(3) is

4

more demanding than the commonality requirement of Rule 23(a). *Comcast*, 133 S. Ct. at 1432. The common questions that must predominate in order to justify class treatment are determined by the elements of the legal claim for which certification is sought. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Specifically, Plaintiff must identify the elements that are susceptible to generalized proof and whether those elements predominate over those that are not susceptible to generalized proof. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Rule 23 is not a pleading standard; Plaintiff must demonstrate *actual*, not *presumed*, conformance with Rule 23's requirements. XTO Energy, 725 F.3d at 1217-18. The Court must conduct a rigorous analysis of the class certification requirements, even if that analysis overlaps with the merits of the underlying claim. *Id.*

### III. THE DOWNTIME CLASS MUST BE LIMITED TO MINIMUM WAGE RECOVERY UNDER THE MINIMUM WAGE ACT.

Defendants agree that, for purposes of Plaintiff's unpaid straight time (downtime) claim, the only legal issue is whether Ella Bliss' practice of assigning a below-minimum wage hourly rate or no separate hourly rate to certain hours, regardless of whether total compensation divided by total hours in a workweek results in an above-minimum wage hourly rate, violates Colorado law. (*See* Doc. #133 at p. 3.) Plaintiff does not dispute, nor could she, that each service technician's weekly total compensation divided by weekly total hours worked resulted in an hourly rate for each hour worked in excess of Colorado minimum wage. (Doc. #133 at p. 3.) Therefore, the issue boils down to a question of whether it matters, under Colorado law, how an employer "does the math." For example, in 2018 the

5

Colorado minimum wage was $10.20 per hour. *See* https://cdle.colorado.gov/wage-and-hour-law/minimum-wage, accessed Feb. 2, 2022. For an eight-hour shift paid at minimum wage, a service technician would earn $81.60. Under Ella Bliss' compensation system, Plaintiff Miles at one point made $17.50 per service hour and received $5.50 for downtime. (Doc. #133 Ex. 12.). For that same eight-hour shift, assuming five hours of service time and three hours of downtime, Plaintiff would have earned $104.00 ($87.50 in service time and $16.50 downtime). Even without a separate downtime rate, Plaintiff's five service hours alone would net her more than eight hours at minimum wage ($17.50 x 5 = $87.50). Plaintiff alleges that the scenarios netting more money for Plaintiff are illegal because the service technicians sometimes would perform work during downtime, and the downtime hours did not have a specific hourly rate of at least minimum wage attached to them.[2]

The proposed downtime class must be limited, however, to the potential recovery of minimum wage under the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq*. Plaintiff pleaded her downtime claim under both the Colorado Wage Act, C.R.S. §§ 8-4-101, *et seq.* and the Minimum Wage Act. (Doc. #114 at p. 30.) The statute of limitations for claims under the Colorado Wage Act is two years, or three years if the alleged conduct was willful. C.R.S. § 8-4-122; *Hernandez v. Ray Domenico Farms, Inc.,* 414 P.3d 700, 704 (Colo. 2018). However, Plaintiff seeks a class based on the general six-year statute of limitations allegedly applicable

---

[2] It is unclear how—or if—Plaintiff's argument about Colorado rest break law applies to the disputed legal issue on the downtime claim. (*See* Doc. #133 at pp. 4-5.) Colorado law requires that employees receive ten minutes of pay for duty-free rest breaks; in other words, ten minutes of pay for doing *no work*. Of course, the method of dividing total compensation by total hours worked, even if the led to the employee receiving at least minimum wage for a missed ten-minute break, would not satisfy Colorado law because it would not give employees what they are promised under the law – ten minutes' of paid, duty-free time.

to claims under the Minimum Wage Act. (Doc. #133 at p. 5.). Defendants concede that the question of *which statute of limitations applies* under the Minimum Wage Act can be determined on a class-wide basis. However, a single class cannot be certified as to a claim arising under two different statutes with different statutes of limitations and different remedies. By its name, the Minimum Wage Act allows plaintiffs to recover unpaid minimum wage. C.R.S. § 8-6-101. The Colorado Wage Act, however, provides for greater recovery based on the more expansive definition of "wages," which presumably would include wage rates higher than minimum wage. *See* C.R.S. § 8-4-101(14)(a). It goes without saying that Plaintiff cannot use the statute of limitations applicable to one statute to expand the group of service technicians who could recover different remedies under a different statute. Therefore, if Plaintiff's requested class is certified, it must be limited to a claim under the Minimum Wage Act for recovery of no more than the relief provided for in that act.

If properly tailored as noted above, Defendants do not challenge numerosity, commonality, typicality or Plaintiff's adequacy under Rule 23(a) or predominance or superiority under Rule 23(b)(3) as to the legal question related to downtime. However, as addressed in more detail below, Plaintiff has not established the adequacy of proposed class counsel and thus has not satisfied Rule 23(g).

**IV.   THE PROPOSED COMMISSION AND TIP THEFT CLASS CANNOT BE CERTIFIED.**

Plaintiff's proposed class for her underpaid commissions and tip theft claims should not be certified. Plaintiff cannot meet the requirements of Rule 23(a) or (b)(3) when the claims are considered together, nor can she meet them even if the proposed class is split into subclasses related to each claim.

7

### A. Individual Issues and Questions Predominate and Prevent Certification of a Commission Class.

Plaintiff alleges that Ella Bliss' practice of calculating service technicians' commission as 5 percent of each technician's service rate breached the service technicians' offer letters and, rather, should have been calculated as 5 percent of the amounts charged to the customers for those service. (Doc. #133 at pp. 6-8.). All service technicians in the proposed class, including Plaintiff, were paid 5 percent commissions calculated on their hourly service rates. (Doc. #133-2 at 87:9-88:1-5; 100:25-104:21; #133-17 at 55:11-56:22; 133-9 at ¶ 7.) However, the universality of this policy does not justify class certification because it is undisputed, and the actual legal and factual issues to be decided in this case are highly individualized.

The proposed class members' offer letters do not all contain the same commission language. (Doc. #133-11, 133-12.) Plaintiff's offer letters used the phrase "5% commission on services." (Doc. #133-12.) Forty-eight other service technicians received similar offer letters. (Doc. #133 at p. 6, #133-11.) Most service technicians in the proposed class (256) received offer letters with the language "5% commission on service hours." (Doc. #133 at p. 6, #133-11.) Other letters referred to "5% commission on service rate" (3) or just "5% commission" (70). (*Id.*) Despite these differences, Plaintiff attempts to establish common questions of law or fact by arguing that all of the offer letters were unambiguous and had the same plain meaning: 5 percent commission on "revenue generated from services," that is, on the money paid by customers for those services. (Doc. #133 at p. 6.) Defendants argued that commissions were always paid to service technicians as 5 percent on their respective

8

service rates, and all of the offer letters ultimately reflect this intent as to calculation: 5% commission paid on service rate. (Doc. #133-2 at 87:9-88:15; 100:25-104:21.)

The meaning of the commission language presents an issue of contract interpretation. Contract interpretation is a question of law for the Court. *Klun v. Klun*, 442 P.3d 88, 92 (Colo. 2019). "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City and County of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). "The intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Id.* If a document is unambiguous, it cannot be varied by extrinsic evidence. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo. 1996). If the court determines that a contact contains ambiguities, however, extrinsic evidence can be admitted to determine the intent of the parties. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1236-37 (Colo. 1998).

In her Motion for Class Certification, Plaintiff asserted that the word "commission" has a commonly accepted meaning and so therefore all the offer letters have a single plain meaning and class treatment is proper. (Doc. #133 at pp. 6-7.) She cited to the Black's Law Dictionary definition of "commission" in support. (Doc. #133 at pp. 6-7.). In her deposition, Plaintiff offered her own opinion as to the "industry standard" meaning of "commission," even though prior to Ella Bliss Plaintiff never worked in the industry as an employee, but only as a booth renter, and thus never earned commission. (Doc. #133-17 at 10:16-22; 55:11-56:17.) The definition and Plaintiff's These assertions, however, do not create a class-wide issue. The interpretation of these offer letters will not turn on the word "commission" alone, but rather on the phrasing of the entire commission term, be it "service rate," "service

9

hours," "services," or just "commission." *See Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1149 (10th Cir. 2000) (in determining ambiguity, reference must be made to all provisions of the agreement). Clearly, then, whether each permutation of the offer letter is ambiguous cannot be determined on a class-wide basis. *See XTO Energy*, 725 F.3d at 1219 (reversing certification of class on a breach of contract claim when the class involved many different contracts and plaintiff failed to produce evidence that the key legal question existed class-wide.). As it cannot be decided on a class-wide basis, ambiguity is not a "common" issue that can be decided on a class-wide basis.

Should the Court find one or more of the offer letters to be ambiguous, it must then determine the intent of the parties as to the commission term through extrinsic evidence. *Lazy Dog*, 965 P.2d at 1136-37. In determining the parties' intent, the Court looks to the statements or conduct of the parties before the dispute. Colo. Civ. Jury Inst. 30:13. Evidence going to intent includes the language of the agreement, the parties' negotiations, the parties' prior dealings, reasonable expectations the parties may have had as a result of the conduct or promises of the other party, and any other facts or circumstances that existed at the time the contract was formed. *Id.* This analysis can only be done on a technician-by-technician basis—no method exists by which individual technicians' understandings, conversations, or beliefs could be determined as a group.

The general legal principle that ambiguities must be construed against the drafter does not change this result. Courts in Colorado construe ambiguous terms against the drafter only when other methods of contract interpretation fail. *See* Colo. Civ. Jury Inst. 30:35 Notes on Use 3 ("This instruction should not be given unless it appears other rules of

10

interpretation about which the jury is instructed are likely to be unavailing.). Construing the terms in the service technicians' favor is not the starting point for the intent analysis and does not create a class-wide issue.

Plaintiff failed to identify a legal or factual question applicable to the proposed commission class and thus certification of the class is improper. Even creating four subclasses based on the four versions of the offer letter would not ultimately make certification proper. Although Plaintiff could establish commonality and typicality within the subclass applicable to the wording of her offer letter, the intent inquiries would still be individualized—indeed, technician-by-technician—and predominate over the class questions.[3]

### B. Certification of a Tip Theft Class is Improper Because Plaintiff Offers No Evidence that Tips Ever Were Withheld.

Plaintiff failed to establish commonality for the proposed tip theft class because she offered no evidence that the challenged tip policy even existed. To prove civil theft according to Plaintiff's theory, Plaintiff must prove that Defendants demanded work to which they were not legally entitled as a condition for service technicians receiving their tips. Colo. Jury Inst. Civil 32:4. However, Plaintiff failed to present evidence that *any* service technician was ever actually denied his or her tips for any reason, including the alleged failure to perform "downtime" or post-shift chores. Plaintiff testified that she never had a manager withhold her tips for any reason. (Doc. #133-17 at 95:18-20.) The two declarations Plaintiff

---

[3] Defendants do not contest numerosity, even as to subclasses, except as to a subclass comprised of service technicians whose offer letters contained the language "5% commission on service rate." Only three technicians make up this class. (Doc. #133 at p. 6.)

submitted with her Motion state, in identical language, the general allegation that managers withheld tips, but neither provides any evidence, or even an affirmative statement, that the declarant was personally subjected to this alleged practice. (Doc. #133-8, 133-10.) In contrast, Defendant Vanhavermaat testified that although the general practice was for service technicians to collect their tips on their way out at the end of their shifts, tips were not withheld if asked for. (Doc. #133-2 at 120:1-121:11; 167:13-170:23; 219:18-220:13.) Plaintiff provided no evidence to the contrary.

The alleged common question of "the truth or falsity of Ella Bliss's claim that it permitted store managers to give service technicians their cash tips even if service technicians refused to perform end of shift 'downtime' chores," (Doc. #133 at p. 9), is irrelevant because Plaintiff failed to present evidence of the necessary preliminary question—that *any* service technician was denied his or her tips, for any reason, much less for refusing to perform after-shift duties. Put another way, Miles failed to identify a single technician—including herself—who was subject to the allegedly illegal common policy. As a result, class certification fails. XTO Energy, 725 F.3d at 1217-18, (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)) ("Rule 23 is more than a pleading standard . . . . The party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc.").

Moreover, even if Plaintiff could establish the existence of a common question related to alleged tip theft, as she herself never had her tips withheld, her claim—or lack thereof—is not typical, nor can she be an adequate class representative. *In re Crocs, Inc. Securities Lit.*,

306 F.R.D. 672, 688 (D. Colo. 2014) (to be an adequate class representative, the named plaintiff must be part of the class, possess the same interests, and suffer the same injury as the other class members) (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 5891, 625-25 (1997)).

## V. PLAINTIFF'S COUNSEL FAILED TO ADDRESS THEIR ADEQUACY IN LIGHT OF THE STATE COURT LAWSUIT AGAINST THEM.

Plaintiff's counsel must affirmatively demonstrate to the Court that they are adequate to serve as class counsel. *Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-NRN, 2019 WL 3075339, at *5 (D. Colo. July 15, 2019). In determining whether counsel is adequate to represent a class under Rule 23, a court may consider "all matters which may be germane" to the issue. *Montano v. Chao*, No. CIVA07CV-00735-CMA-KMT, 2008 WL 5377745, at * 4 (D. Colo. Dec. 19, 2008).

Plaintiff represented that "there is no conflict of interest between the potential class members and either Ms. Miles or her counsel." (Doc. #133 at p. 11.) As this Court is well aware, a state law defamation action, brought by the entity Defendants, currently is pending against Plaintiff's counsel related to statement made at a press conference and in a press release related to this federal case. (Doc. #121.) Although the trial court initially dismissed the case in its entirety, the Colorado Court of Appeals recently ordered the case partially reinstated. Plaintiff's counsel filed a petition for certiorari with the Colorado Supreme Court. (*Id.*)

Plaintiff's counsel moved for a stay of this federal court lawsuit on September 25, 2019, arguing that the existence of the state court lawsuit posed an impediment to the

13

federal court lawsuit, including certification of classes and appointment of class counsel. (Doc. #78.) This Court denied the stay on November 13, 2019. (Doc. #81.) Nevertheless, Plaintiff's counsel has repeatedly represented to the Court that the state court case has delayed class certification, and in Plaintiff's Second Amended Complaint, Plaintiff's counsel added an abuse of process claim alleging that the state court case filed against them was retaliation against Plaintiff Miles for filing the federal court case and caused delay and damage. (Doc. #104-1 at p. 2.) By adding the abuse of process claim, the merits of the lawsuit against Plaintiff's counsel have become relevant to the merits of Plaintiff Miles' claims. Although Plaintiff has not sought class certification for the abuse of process claim, the class and non-class claims are inextricably intertwined, and Plaintiff's allegations of significant delay would apply to all class claims, as well.

Two factors determine adequacy of representation: (1) whether the named plaintiff or her counsel have any conflicts of interest with the other class members; and (2) whether the named plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Ritter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). Despite Plaintiff's counsel's representations to the Court during the pendency of this case, including but not limited to the Motion for Stay, Plaintiff's counsel wholly failed to address the impact of the state court case on their adequacy to be class counsel in the Motion for Class Certification. Given Plaintiff's counsel obvious financial interest in being appointed class counsel, and their repeated representations to this Court that the state court litigation has had and will have, for as long as it is active, significant impact on this federal case, counsel's

failure to address it in the Motion for Class Certification the failure represents, in and of itself, a failure to establish adequacy.

## VI. CONCLUSION.

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiff's Motion for Class Certification.

Dated this 14th day of February, 2022.

> Respectfully submitted,
>
> *s/ Brooke A. Colaizzi*
> Brooke A. Colaizzi
> Raymond M. Deeny
> Heather F. Vickles
> SHERMAN & HOWARD L.L.C.
> 675 Fifteenth Street, Suite 2300
> Denver, CO 80202
> Telephone: (303) 297-2900
> Facsimile: (303) 298-0940
> bcolaizzi@shermanhoward.com
> rdeeny@shermanhoward.com
> hvickles@shermanhoward.com
>
> *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of February 2022, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION UNDER RULE 23(b)(3) AND APPOINTMENT OF CLASS COUNSEL UNDER RULE 23(g) (ECF No. 133)** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mari Newman, Esq. | Alexander Hood, Esq. |
| Liana Orshan, Esq. | David Seligman, Esq. |
| KILLMER, LANE &NEWMAN, LLP | TOWARDS JUSTICE |
| 1543 Champa St., Suite 400 | 1410 High St., Suite 300 |
| Denver, CO 80202 | Denver, CO 80218 |
| mnewman@kln-law.com | alex@towardsjustice.org |
| lorshan@kln-law.com | david@towardsjustice.org |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |

                                              *s/ Barbara McCall*
                                              Barbara McCall, Practice Assistant