IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01212-PAB-MEH

LISA MILES a/k/a Elisa Marie Miles, and those similarly situated,

      Plaintiff/Counter Defendant,

v.

BKP INC.,
ELLA BLISS BEAUTY BAR LLC,
ELLA BLISS BEAUTY BAR – 2, LLC,
ELLA BLISS BEAUTY BAR – 3, LLC,
BROOKE VANHAVERMAAT,
KELLY HUELSING, and
PETER KOCLANES,

      Defendants/Counter Claimants.

---

**ORDER**

---

This matter is before the Court on plaintiff's Motion to Dismiss Defendants' Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) [Docket No. 118]. Defendants responded to the motion, Docket No. 119, and plaintiff replied.  Docket No. 128.

**I.  BACKGROUND[1]**

Plaintiff was an employee at Ella Bliss.[2]  A normal workweek for Ella Bliss

---

[1] The Court assumes that the allegations in defendants' Answer to Second Amended Class and Collective Action Complaint and Counterclaims [Docket No. 115] are true in considering this motion to dismiss.  *Cf. Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[2] The Court refers to defendants Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC collectively as "Ella Bliss."

employees includes 30 hours or four shifts.  Docket No. 115 at 66, ¶ 2.  An employee's working hours parallel his or her "booking hours," not actual appointment hours.  *Id.*, ¶ 3.  "Time worked" includes "all the time employees spend on the job performing assigned duties."  *Id.*, ¶ 7.

Ella Bliss uses an "industry-focused point-of-sale" system called "Booker" for scheduling and tracking employees' hours.  *Id.*, ¶ 4.  The Booker system records each employee's 30-minute lunch break and any periods during which an employee is considered "on-call."  *Id.*, ¶ 5.  Employees have full access to the Booker system on a computer in the break room at each location.  *Id.*, ¶ 6.

Ella Bliss keeps an accurate record of employees' work time in order to calculate pay and benefits, and all employees are required to clock-in and -out for their scheduled shifts, including clocking out for lunch and when they leave Ella Bliss premises.  *Id.* at 66–67, ¶¶ 8–9, 11.  Employees must also clock-in 15 minutes before the start of each scheduled shift in order to prepare for the day.  *Id.* at 66, ¶ 10.  Employees are responsible for accurately recording their time worked.  *Id.* at 67, ¶ 12.  Company policy explicitly prohibits employees from falsifying or tampering with time records and hours worked.  *Id.*, ¶¶ 13–14.  Plaintiff knew that she was required to clock-out for lunch and when she was not present at the store, yet Ella Bliss discovered at least 70 occasions between March 2016 and August 2018 when plaintiff was clocked-in yet not working, resulting in over 46 hours of time for which plaintiff was paid, but did not work.  *Id.* at 68, ¶¶ 22–23.

Ella Bliss encourages employees to raise paycheck discrepancies with their managers immediately.  *Id.* at 67, ¶ 15.  Plaintiff never raised any such issues.  *Id.*, ¶ 16.

Plaintiff, however, encouraged employees and "members of Ella Bliss" to "sever their ties with Ella Bliss," which caused a "wave of employee turnover."  *Id.*, ¶ 17.  This turnover led to Ella Bliss having to identify and on-board employees in order to provide services to customers who had already scheduled appointments.  *Id.*  Some "employees and members" did, in fact, sever their ties with Ella Bliss as a result of plaintiff's encouragement.  *Id.*, ¶ 18.

Defendants bring three counterclaims: (1) deceit based on fraud for the hours plaintiff was paid but did not work, (2) rights in stolen property for plaintiff receiving payment for hours that she did not work,[3] and (3) intentional interference with prospective business advantage for inducing third parties not to enter into or to continue relations with defendants.  *Id.* at 68–70, ¶¶ 19–42.  Plaintiff moves to dismiss each of defendants' counterclaims.  Docket No. 118.

## II.  LEGAL STANDARD

Motions to dismiss counterclaims in Fair Labor Standards Act ("FLSA") cases such as this generally attack the court's exercise of supplemental jurisdiction over the state-law counterclaim and therefore require a review of the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See, e.g.*, *Price v. Wolford*, 608 F.3d 698, 702–04 (10th Cir. 2010); *Deasy v. Optimal Home Care, Inc.*, No. 17-cv-00287-MSK, 2018 WL 10911745, at *2 (D. Colo. Nov. 2, 2018) ("The Tenth Circuit treats the question of whether supplemental jurisdiction is properly exercised as an issue of subject matter jurisdiction over the supplemental claims."); *see also*

---

[3] The parties refer to this counterclaim both as the "rights in stolen property" counterclaim and as the "civil theft" counterclaim.  *See* Docket No. 118 at 7; Docket No. 119 at 11.

*Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983) (permitting an employer to "try his private claims, real or imagined, against his employees [in an FLSA action] would delay and even subvert the whole process")).

A motion under Rule12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A plaintiff bears the burden of establishing that the Court has jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1).  *See Jackson v. City and Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012). Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671

F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alterations omitted).

## III.  ANALYSIS

Plaintiff moves to dismiss defendants' counterclaims for lack of subject matter jurisdiction under Rule 12(b)(1), *see* Docket No. 118 at 3–6, and for failure to state a claim under Rule 12(b)(6).  *See id.* at 6–10.  The Court considers plaintiff's Rule 12(b)(1) arguments first.

### A.  Whether the Court has Subject Matter Jurisdiction over Counterclaims

Generally, in FLSA actions, the Tenth Circuit disfavors the exercise of supplemental jurisdiction over state-law counterclaims.  *Donovan*, 717 F.2d at 1323. This is because the FLSA is intended to provide a "narrow and specialized" statutory remedy to employees based almost exclusively on "the nature of their job, the number of hours that they worked[,] and the amount paid to them."  *Deasy*, 2018 WL 10911745, at *3.  Noting this, courts have held that allowing employers' counterclaims based on "other aspects of the employer-employee relationship" would expand the FLSA beyond what Congress intended.  *Id.* (citing *Lyon v. Whisman*, 45 F.3d 758, 763–64 (3rd Cir.

1995)).  Rather than proceed by counterclaim, the employer "is free to sue his employees in state court."  *Donovan*, 717 F.2d at 1323.  Even though it may be "far more efficient for both the employer and employee to participate in a single, consolidated lawsuit . . . the general trend is to sever employer counterclaims and setoffs from the action."  *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-cv-01637-MSK-MJW, 2014 WL 3408771, at *5 (D. Colo. July 14, 2014).

However, this Court recently denied a motion to dismiss a civil theft counterclaim asserted in an FLSA case.  *See Morales v. RoxBox Containers, LLC*, No. 20-cv-00262-PAB-KLM, 2021 WL 830499, at *3 (D. Colo. Mar. 4, 2021).  The Court held that, "as the *Deasy* court explained, *Donovan* does not bar all state-law counterclaims in FLSA cases, at least not where the counterclaims are 'virtually identical' to the FLSA claims."  *Id.* (citing *Deasy*, 2018 WL 10911745, at *3 (citing *Lyon*, 45 F.3d at 764)).  "[W]here the operative facts are the same, the counterclaim may proceed."  *Id.* (citing *Lyon*, 45 F.3d at 764).

Plaintiff argues that the rule in *Morales* is too broad.  Docket No. 118 at 4.  She seeks to distinguish "contractual and quasi-contractual counterclaims for overpaid wages," which plaintiff concedes "are sufficiently related to FLSA counterclaims," from "tort or tort-like statutory state law counterclaims for overpaid wages," which should not be permitted.  *Id.*  Plaintiff argues that, because defendants' fraud based on deceit and civil theft counterclaims require "more than a mere showing of overpayment to recover," they are not sufficiently related to plaintiff's FLSA claim and must be dismissed.  *Id.* at 5.  Plaintiff also argues that defendants' intentional interference with prospective business advantage counterclaim of the same case or controversy.

The Court's analysis in *Morales*, which also involved a civil theft counterclaim in an FLSA action and allegations that the plaintiff improperly tracked his hours through not clocking in and out, applies in this case as well.  As in *Morales*, where the Court found that *Donovan* did not foreclose counterclaims in FLSA actions that are "virtually identical" to the underlying claims, the Court here finds that defendants' fraud based on deceit and civil theft counterclaims are closely related to plaintiff's FLSA and state-law wage and hour claims.  As in *Morales*, plaintiff's claim that she was not paid in accordance with the federal and state law is closely related to defendants' claims that plaintiff padded her hours by not clocking out for lunch.  *See Morales*, 2021 WL 830499, at *3.  Therefore, the Court finds that, notwithstanding *Donovan*, plaintiff has not shown that the Court lacks jurisdiction to hear defendants' counterclaim.  Other courts have reached similar results.  *See, e.g., Jones v. Addictive Behavioral Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1264 (D. Kan. 2019) (permitting counterclaim because, "[p]ut simply, Plaintiff's FLSA claim is to recover underpaid wages, whereas Defendant's counterclaim is to recover overpaid wages.").  The Court also agrees with defendants that plaintiff's retaliation claims, which are based in part on defendants' allegedly retaliatory counterclaims, are even more closely related to the counterclaims than plaintiff's underlying wage-and-hour claims.  Moreover, plaintiff provides no authority that it is the nature of the counterclaim – tort or contract – that determines whether it can proceed.  Accordingly, the Court finds that it has supplemental jurisdiction over defendants' deceit based on fraud and civil theft counterclaims.

Defendants' intentional interference with prospective business advantage counterclaim, however, is unrelated to plaintiff's wage-and-hour claims.  As the Court

noted previously, defendants allege that plaintiff successfully encouraged employees and members of Ella Bliss to sever their ties with Ella Bliss by encouraging employees to leave and encouraging members to cancel their memberships, which caused employee turnover and increased costs to Ella Bliss.  Docket No. 115 at 67, 70, ¶¶ 17–18, 39.  Defendants do not allege precisely how this occurred.  Nor do defendants connect these allegations or this claim to plaintiff's claims regarding her compensation. As the court found in *Deasy*, these counterclaims "do not . . . arise from the nature of [plaintiff's] job, how many hours [s]he worked during a week[,] and whether [s]he was paid."  *See Deasy*, 2018 WL 10911745, at *3.  Instead, the allegations on this counterclaim relate to alleged conduct separate from plaintiff's work.  In fact, defendants do not allege that plaintiff's purported interference occurred while she was employed at Ella Bliss, and it is not clear that there are many overlapping factual issues or evidence common to plaintiff's wage-and-hour claims and this counterclaim.  *See id.*; *see also McFeeters v. Brand Plumbing, Inc.*, 2016 WL 6581515, at *2–3 (D. Kan. Nov. 7, 2016) (applying *Donovan* and determining that a defendant's counterclaim for unjust enrichment in the form of unearned vacation pay was not sufficiently related to plaintiff's allegations of unpaid overtime and dismissed the counterclaim).

However, unlike in *Morales*, where the plaintiff's retaliation claim had already been dismissed, *see Morales v. RoxBox Containers, LLC*, No. 20-cv-00262-PAB-KLM, 2021 WL 825994 (D. Colo. Mar. 4, 2021), and *Deasy*, where the plaintiff did not plead a retaliation claim, plaintiff in this case has brought retaliation claims, and plaintiff's

retaliation claims are partially in response to defendants' counterclaims.[4]  Thus, although plaintiff is correct that the intentional interference counterclaim is factually distinct from plaintiff's underlying wage-and-hour claims, it is not factually distinct from plaintiff's retaliation claims.  The court reached a similar conclusion in *Ott v. Chacha in Art LLC*, No. 18-cv-01135-LTB-GPG, 2019 WL 10252743 (D. Colo. May 1, 2019).  In that case, the plaintiff brought claims against his employer under the FLSA and related Colorado state laws.  *Id.* at *1.  His employer counterclaimed for breach of fiduciary and loyalty duty and intentional interference with a contractual relationship.  *Id.*  The plaintiff amended his complaint to add retaliation claims in response to the defendant's counterclaims.  *Id.*  The court denied the plaintiff's motion to dismiss the counterclaims because the defendants' counterclaims and the plaintiff's retaliation claims shared a common nucleus of operative fact – that is, the counterclaims were compulsory – and the defendants "surely [would] defend against the retaliation claims on the ground that they brought their counterclaims in good faith, and not to harass or intimidate [the plaintiff] for filing suit."  *Id.* at *2 (quoting *Ayub v. Picco*, 293 F. Supp. 3d 215, 216 (D.D.C. 2018)).  Additionally, the court explained that the defendants' "good faith" in bringing the counterclaims, which would be their defense, "rest[ed] on the bona fides of their counterclaims."  *Id.* (quoting *Ayub*, 293 F. Supp. 3d at 216).  Moreover, the court noted that, even if it dismissed the counterclaims, the defendants could bring the counterclaims in state court, and "if the plaintiff still wanted to bring a retaliation claim, she would have to do so in the state court while simultaneously litigating the original

---

[4] Plaintiff's retaliation claims are also in response to defendants' state-court lawsuit against plaintiff's lawyers, which is pending before the Colorado Supreme Court on a petition for a writ of certiorari. *See Killmer, Lane & Newman, LLP v. BKP, Inc.*, 2021SC930 (Colo. Sup. Ct.).

claims in federal court." *Id.* at *3 (quoting *Ayub*, 293 F. Supp. 3d at 218).  The Court

finds the reasoning in *Ott* and *Ayub* to be persuasive.  Mindful of the general principle in

*Donovan* that, in certain circumstances, counterclaims in FLSA actions are disfavored

and can be retaliatory, the Court recognizes that FLSA retaliation claims allow recovery

for additional damages on top of those recoverable in the underlying claim, which will

incentivize plaintiffs to bring FLSA retaliation claims when justified, as in *Ott* and *Ayub*.

*See id.* at *2 (citing *Ayub*, 293 F. Supp. 3d at 216).  The Court therefore will deny the

Rule 12(b)(1) portion of plaintiff's motion to dismiss.

### B.  Whether Defendants have Plausibly Pled the Counterclaims

Plaintiff argues that defendants' counterclaims should be dismissed under Rule

12(b)(6) for failure to state a claim.  Docket No. 118 at 6–10.  The Court considers the

counterclaims in turn.

#### 1.  Deceit Based on Fraud

Plaintiff argues that defendants' fraud counterclaim is barred by the economic

loss rule. *Id.* at 6–7.  In order to maintain a distinction between tort and contract law,

the Colorado Supreme Court has adopted the "economic loss rule."  *See Town of Alma

v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).  Under this rule, "a party

suffering only economic loss from the breach of an express or implied contractual duty

may not assert a tort claim for such a breach absent an independent duty of care under

tort law."  *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887

F.3d 1003, 1020 (10th Cir. 2018) (quoting *Town of Alma*, 10 P.3d at 1264).  The focus

of the inquiry is on "the source of the duty alleged to have been violated."  *Town of

Alma*, 10 P.3d at 1262–63.  "Tort obligations generally arise from duties imposed by

law," while "contract obligations arise from promises made between parties." *Id.* at 1262 ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995))).  The Colorado Supreme Court has made clear that the focus should not be on the nature of the loss, i.e., not whether it is economic, but rather on the source of the duty.  *Id.* at 1262 n.8 ("[W]e believe that a more accurate designation of what is commonly termed the 'economic loss rule' would be the 'independent duty rule.'"); *id.* at 1063 (The economic loss rule has "no application" where "the claim is based on a recognized independent duty of care."); *see also A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 866 (Colo. 2005).  In determining the source of the duty in a particular case, courts consider three factors: whether (1) the claim lies in tort, (2) the source of defendants' loss is the breach of an express or implied contractual duty, and (3) the claim is not based on a recognized independent duty of care.  *See Autotech Techs., LP v. Palmer Drives Controls & Sys., Inc.*, No. 19-cv-00718-PAB-NRN, 2020 WL 1974759, at *8 (D. Colo. Apr. 24, 2020); *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004).

There is some tension as to whether the economic loss rule bars fraud claims. On the one hand, courts have held that application of the economic loss rule to bar fraud claims depends on the terms of the contract.  These courts hold that, where a contract subsumes an otherwise-applicable common-law duty (such as a duty to make truthful representations or a duty of reasonable care), the economic loss rule bars any claims based on that duty.  *See id.* at 75 (economic loss rule barred negligent

misrepresentation claim where construction contract defined the parties' obligations to inspect for quality and report any nonconforming work); *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 541 (Colo. App. 2011) (negligent misrepresentation claim barred where defendant falsely represented that it was performing a contractual obligation).  Similarly, these courts hold that, where the contract does not subsume common-law duties, the economic loss rule should not be applied, and the claim may proceed.  *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 963 (10th Cir. 2009) (holding that an "economic-loss-rule argument fails" where "the tort duty alleged . . . is not duplicated in [the relevant] contract"); *see also In re Estate of Gattis*, 318 P.3d 549, 556 (Colo. App. 2013) (economic loss rule did not bar claim for nondisclosure of defect in real estate contract where the contract did "not set out a standard of care or incorporate one by reference" and buyer did not disclaim reliance on seller's representations).

Because Colorado imposes a common-law duty "to abstain from fraud," *see Haynes Trane*, 573 F.3d at 962; *see also Town of Alma*, 10 P.3d at 1263 (observing that a "common law fraud claim is based on violation of a duty independent of contract"), these courts hold that the economic loss rule does not bar a fraud claim unless the duty was subsumed in the contract, in which case the economic loss rule applies and the claim must be dismissed.  Plaintiff's common-law duty to abstain from fraud was reduced to the contract.  *See* Docket No. 115 at 66–67, ¶¶ 8–9, 11–14 (alleging that all employees are required to click-in and -out for their scheduled shifts, including clocking out for lunch; that employees are responsible for accurately recording their time, and that company policy explicitly prohibits employees from falsifying or

tampering with time records and hours worked).  Thus, at least some courts would apply the economic loss rule to bar the counterclaim in this case.  *See, e.g.*, *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 292 (Colo. App. 2009) (holding that, notwithstanding a common-law duty to abstain from fraud, claims of fraud relating to the performance of a contract are barred by the economic loss rule) (citing *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 670–80 (3d Cir. 2002) (applying Pennsylvania law); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 562–65 (D.N.J. 2002) (applying New Jersey law); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,* 532 N.W.2d 541, 544–46 (Mich. App. 1995)).

On the other hand, the Colorado Supreme Court found it notable that, "since adopting the economic loss rule" in *Town of Alma*, the court "ha[s] applied it only to bar common law tort claims of negligence or negligent misrepresentation."  *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1155 (Colo. 2019).  The court also noted that "the economic loss rule generally should not be available to shield intentional tortfeasors from liability for misconduct that happens also to breach a contractual obligation."  *Id.* 1154 n.6 ("To the extent the economic loss rule treats parties' assumption of contractual duties as disclaimers of their existing obligations in tort, it should be applied with some of the circumspection with which we have approached other exculpatory agreements." (citing *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981)).

Deceit based on fraud is an intentional tort.  Thus, under *Bermel*, the Court must be wary of applying the economic loss rule to bar this counterclaim.  *See id.*  However, there is no indication that plaintiff's contract disclaims any existing obligation not to commit fraud, which the court in *Bermel* indicated that it was concerned with, as the

duties that plaintiff allegedly breached in her timekeeping were subsumed by her contract.  This led the court to apply the economic loss rule consistent with the admonition in *Bermel*.  *See, e.g.*, *Haynes Trane*, 573 F.3d at 963; see also *First Franklin Fin. Corp. v. United Title Co.*, No. 08-cv-01866-PAB-MEH, 2009 WL 3698526, at *4 (D. Colo. Nov. 5, 2009) ("When parties choose to define their duties through a contract, courts look to whether the contract fully defines the duty allegedly breached or whether a distinct duty, independently recognized, exists").

After *Bermel*, the Tenth Circuit has explained that, "[a]lthough fraud is an intentional tort, the economic loss rule may still apply, depending on the nature of the alleged fraud."  *See McNees v. Ocwen Loan Servicing, LLC*, 853 F. App'x 211, 215 (10th Cir. 2021) (unpublished).  The Tenth Circuit contrasted a claim for "fraud in the inducement of a contract," which the economic loss rule would not bar, *id.* (citing *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 607 (Colo. 2016)), with "fraud relating to the performance of a contract," which is "generally redressable only through a breach of contract claim if it leads only to the damages one would expect from a breach," and which the economic loss rule would bar.  *Id.* (citing *Hamon Contractors*, 229 P.3d at 292); *see also United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (applying Colorado law and holding that "fraud relating to the performance of a contract" is generally redressable only through a breach of contract claim if it leads only to the damages one would expect from a breach); *Leiserv, LLC v. Summit Ent. Centers, LLC*, No. 15-cv-01289-PAB-KLM, 2017 WL 491171, at *6 (D. Colo. Feb. 6, 2017) ("Where, however, the only allegation in the tort claim is the breach of 'promises the parties have made to each other,' the claim sounds in contract."

(quoting *A.C. Excavating*, 114 P.3d at 865–66)).  Because defendants' deceit based on fraud counterclaim alleges fraud in plaintiff's performance of her employment contract, rather than fraudulent inducement to enter into the contract, *see* Docket No. 115 at 68–69, ¶¶ 19–29, the Court will apply the economic loss rule and will grant plaintiff's motion to dismiss that counterclaim.

### 2.  Rights in Stolen Property or Civil Theft

Plaintiff seeks to dismiss defendants' civil theft counterclaim.  Docket No. 118 at 7–8.  The parties dispute whether defendants' allegations are conclusory or whether they permit a reasonable inference of civil theft.  *See id.*; Docket No. 119 at 11–12.

Under Colorado law, a person commits civil theft when he or she "'knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,' and acts intentionally or knowingly in ways that deprive the other person of the property permanently."  *Van Rees*, 373 P.3d at 608 (quoting Colo. Rev. Stat. § 18-4-401(1)).  A person must have "the specific intent to permanently deprive the owner of the benefit of property."  *Id.*  In an action for civil theft, a person may maintain an action to recover "property obtained by theft, robbery, or burglary."  Colo. Rev. Stat. § 18-4-405; *see Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000) (holding that the statute provides an owner of property with a private remedy that "requires proof of a specified criminal act").

Plaintiff argues that defendants fail to state a civil theft claim because they "parrot[] the intent element from the statute" and "ask[] the Court to infer [plaintiff's] intent based on allegations that [she] knew she was required to clock out for . . . lunch . . . [but] did not."  Docket No. 118 at 7–8.  Because defendants' allegations could be

consistent with negligence or mistake, plaintiff argues that defendants have not stated a plausible claim for civil theft. *Id.*

Plaintiff is correct that a conclusory statement of specific intent is inadequate to state a claim for civil theft. *See Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018); *Brightspot Sols., LLC v. A+ Prod., Inc.*, No. 20-cv-03335-MEH, 2021 WL 1251512, at *12 (D. Colo. Apr. 5, 2021) (holding allegation that defendant "inten[ded] to deprive Plaintiff permanently of the intended use and benefit of those things of value" was "conclusory and insufficient to establish a civil theft claim"); *Zivaro, Inc. v. BOHICA Assocs. Corp.*, No. 20-cv-01095-PAB-STV, 2022 WL 218624, at *3 (D. Colo. Jan. 25, 2022) (dismissing civil theft claim because plaintiff pled "no facts to support th[e] conclusion" that defendant had the requisite intent).  Defendants, however, have provided more than a conclusory allegation regarding plaintiff's state of mind, and, viewing the allegations in the answer in the light most favorable to defendants, as the Court must, the Court concludes that it can be inferred that plaintiff intended to permanently deprive defendants of the money that they paid her for the hours that she allegedly did not work.  Defendants allege that plaintiff knew defendants' timekeeping policies and the requirement to clock-out for lunch, yet plaintiff apparently did not do so on at least 70 occasions.  Docket No. 115 at 66–68, ¶¶ 9–11, 23.  According to defendants, plaintiff also never alerted defendants that she was overpaid, which she was encouraged to do.  *Id.* at 67, ¶¶ 16.  This is indicative of a specific intent to "permanently deprive [] [defendants] of the benefit of" the money that they paid plaintiff because the Court infers that plaintiff knew that her paycheck did not accurately reflect her hours worked on at least 70 occasions.  *See Van Rees*, 373 P.3d at 608; *see also*

*DTC Energy Grp. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1181 (D. Colo. 2019) (finding allegation that defendant used confidential information for competitive advantage to lead to plausible inference of intent to permanently deprive defendant of the information).

Although it is theoretically possible that plaintiff only negligently failed to clock out for lunch at least 70 times, even though she knew defendants' policies, a reasonable person who saw more than 70 mistakes on her paychecks would alert her supervisor, not simply ignore the overpayment reflected on her paycheck.  The Court draws reasonable inferences in defendants' favor and finds that defendants have pled more than the mere possibility of misconduct and have "nudge[d]" the claim from "conceivable to plausible."  *See Iqbal*, 556 U.S. at 683; *Khalik*, 671 F.3d at 1190 (quoting *Twombly*, 550 U.S. at 570).  Plaintiff's alleged conduct is more than negligent.

Plaintiff relies on *Moses-El v. City & Cnty. of Denver*, 376 F. Supp. 3d 1160, 1172–73 (D. Colo. 2019), for the argument that, where a party has pled allegations that may permit many possible inferences, consistent with both intent and negligence, the party has not "dispel[led] the possibility that [the alleged wrongdoer] acted with mere negligence," which the pleader must do to overcome a motion to dismiss.  Plaintiff's reliance on *Moses-El*, however, is misplaced because it is reasonable in this case for the Court to infer plaintiff's intent, as mentioned previously, and because the plaintiff in that case did not allege any facts supporting intent.  *See id.* at 1173 ("Nowhere does the Amended Complaint assert facts that show that [defendant] was subjectively aware of the need to retain the evidence" or that he "directed that [evidence] be destroyed with the specific purpose of depriving [plaintiff] of it.").  Here, however, as the Court has noted, defendants allege that plaintiff knew of her obligations to accurately track her

time, clock-out for lunch, and report paycheck discrepancies, yet she failed to do so at least 70 times and never reported a discrepancy.  These allegations are not "so general that they encompass a wide swath of conduct, much of it innocent," *see Khalik*, 671 F.3d at 1191, and the Court finds that the answer "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *See Bryson*, 534 F.3d at 1286 (citation omitted).[5]

### 3.  Intentional Interference with Prospective Business Advantage

Plaintiff argues that defendants' intentional interference with a prospective business advantage counterclaim must be dismissed because defendants have not alleged that plaintiff's conduct was intentional or improper.  Docket No. 118 at 9–10. "Tortious interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract."  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995).  Colorado follows the Restatement (Second) of Torts, which provides that

> [o]ne who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Id.* (citing Restatement (Second) of Torts § 766B (1979)); *see also Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017); *Preston v. Atmel Corp.*,

---

[5] Plaintiff argues that the 70 alleged instances of failing to clock-out, which amounted to 46 hours of unearned pay, is a "small amount of time."  Docket No. 118 at 8.  To the extent plaintiff implies that someone with the requisite intent to commit civil theft would have defrauded defendants more often, the Court is not convinced.  The fact that an alleged fraudster may not have committed fraud at every opportunity does not mean that she did not do it sometimes.

560 F. Supp. 2d 1035, 1039 (D. Colo. 2008).  "Under Colorado law, even a contract terminable at will is entitled to some protection from intentional interference."  *Preston*, 560 F. Supp. 3d at 1039 (citing *Donohue v. Unipac Serv. Corp.*, 847 F. Supp. 1530, 1534 (D. Colo. 1994)).  "In order to qualify as a protected relationship, 'there [must be] a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope.'"  *Crocs*, 248 F. Supp. 3d at 1059 (*quoting Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)).

Defendants allege that plaintiff successfully "encouraged employees and members of Ella Bliss to sever their ties with Ella Bliss thus causing a wave of employee turnover and quickly running up Ella Bliss costs to immediately identify and onboard their replacements in order to providing services to already-schedule members and customers."  Docket No. 115 at 67, ¶¶ 17–18.  Defendants state that they had ongoing relationships with employees and members and sought to hire new employees, which plaintiff was aware of.  *Id.* at 69–70, ¶¶ 36–39.  Defendants also allege that plaintiff "intentionally and improperly induced or caused third persons not to enter or continue business relations with [d]efendants" and "intentionally and improperly prevented [d]efendants from acquiring or continuing business relations with employees and members."  *Id.* at 70, ¶¶ 39–40.

Although there are no allegations what plaintiff told the employees to allegedly encourage them to leave Ella Bliss, defendants provide notice that plaintiff encouraged employees to sever ties with Ella Bliss, which caused a wave of turnover, and threatened defendants' relationships with other employees and prospective hires.  That is sufficient to put plaintiff on notice of defendants' claim that plaintiff intentionally

interfered.  *Erickson  v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) ("Specific facts are

not necessary; the statement needs only 'give the defendant fair notice of what the

claim is and the grounds upon which it rests.'" (quoting *Twombly*, 550 U.S. at 555)).

However, defendants have pled no facts indicating that plaintiff's interference

was improper.  Courts consider seven factors in determining whether intentional

interference is improper: the nature of the actor's conduct, the actor's motive, the

interests of the other with which the actor's conduct interferes, the interests sought to be

advanced by the actor, the social interests in protecting the freedom of action of the

actor and the contractual interests of the other, the proximity or remoteness of the

actor's conduct to the interference, and the relations between the parties.  *Amoco Oil*,

908 P.2d at 500 (citing Restatement (Second) of Torts § 767); *see also Jefferson Cnty.

Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999)

(applying *Amoco* factors in affirming dismissal of claim for intentional interference with a

prospective business relation for failure to state a claim); *SGS Acquisition Co. Ltd. v.

Linsley*, No. 16-cv-02486-MSK-KLM, 2018 WL 1456272, at *3 (D. Colo. Mar. 23, 2018)

(applying *Amoco* factors in dismissing intentional interference with a prospective

business relation for failure to state a claim); *Altitude Sports & Ent., LLC v. Comcast

Corp.*, No. 19-cv-3253-WJM-MEH, 2020 WL 8255520, at *15–16 (D. Colo. Nov. 25,

2020) (same); *Autotech Techs.*, 2020 WL 1974759, at *4–5 (applying *Amoco* factors in

denying motion to dismiss intentional interference with a prospective business relation

claim).  Defendants have failed to plausibly allege that plaintiff's interference was

improper.  Therefore, they have failed to plausibly state a claim for intentional

interference with a prospective business advantage, and the Court will grant plaintiff's

motion to dismiss this claim.[6]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that on plaintiff's Motion to Dismiss Defendants' Counterclaims

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) [Docket No. 118] is **GRANTED in part**

and **DENIED in part**.  It is further

**ORDERED** that defendants' first counterclaim, for deceit based on fraud, and

third counterclaim, for intentional interference with a prospective business advantage,

are **DISMISSED with prejudice**.

DATED September 15, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[6] Defendants ask for leave to amend their answer in the event he Court dismisses any of their claims.  *See* Docket No. 119 at 2, 13.  Pursuant to the Local Rules, however, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading.  D.C.COLO.LCivR 15.1(b).  Defendants did not do so. The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that normally a court need not grant leave to amend when a party fails to file a formal motion."  *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal.  The court should not have to address repeated "improvements" to the complaint.  When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." (quotations omitted; alteration in original).