IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01212-PAB-MEH

LISA MILES a/k/a Elisa Marie Miles, and those similarly situated,

      Plaintiff/Counter Defendant,

v.

BKP INC.,
ELLA BLISS BEAUTY BAR LLC,
ELLA BLISS BEAUTY BAR – 2, LLC,
ELLA BLISS BEAUTY BAR – 3, LLC,
BROOKE VANHAVERMAAT,
KELLY HUELSING, and
PETER KOCLANES,

      Defendants/Counter Claimants.

---

**ORDER**

---

This matter is before the Court on plaintiff's Motion for Class Certification Under Rule 23(b)(3) and Appointment of Class Counsel Under Rule 23(g) [Docket No. 133]. Defendants responded to the motion, Docket No. 139, and plaintiff replied.  Docket No. 146.

**I.  BACKGROUND**

The Court assumes familiarity with the background facts and procedural history of this dispute, which are set forth in previous orders and recommendations, *see, e.g.*, Docket Nos. 103, 110, 113, and will not be repeated here except as necessary to resolve plaintiff's motion.

Between March 2016 and September 2017, plaintiff worked as a "service

technician" and "lead service technician" at defendants' salons, which provide manicures, pedicures, massages, blowouts, facials, waxing, lashes, and makeup. Docket No. 133 at 2 (citing Docket No. 133-2 at 9–10).  All service technicians were subject to the same general pay policies.  *Id.* (citing Docket No. 133-2 at 13).  Plaintiff brings nine claims for relief: (1) unpaid overtime under the Fair Labor Standards Act ("FLSA"); (2) unpaid overtime under Colorado law; (3) unpaid straight time[1] under Colorado law; (4) unpaid commissions under the Colorado law; (5) civil theft for withholding tips to compel labor under Colorado law; (6) FLSA retaliation; (7) Colorado Wage Claim Act retaliation; (8) negligence *per se*; (9) abuse of process.  Docket No. 114 at 27–40, ¶¶ 153–234.

Plaintiff claims that defendants' employees were underpaid because of defendants' policies, which include requiring employees to perform cleaning and other chores for less than minimum wage or no pay, withholding tips until the cleaning and other chores were completed, and promising to pay employees 5% commissions on the value of services, but instead paying only an additional 5% of the employee's hourly wage.  Docket No. 133 at 1.  Plaintiff seeks class certification for three of her claims: (1) the unpaid straight time/downtime claim; (2) the unpaid commission claim; and (3) the civil theft claim for withholding tips.  *See generally id.*  As discussed below, for her first claim, plaintiff seeks to certify two classes, one under the Colorado Minimum Wage Act for service technicians who worked at any of defendants' locations for six years before

---

[1] The parties use the terms "straight time" and "downtime" synonymously.  *See, e.g.*, Docket No. 133 at 10 (referring to plaintiff's "unpaid straight time claims"); *id.* at 11 (arguing plaintiff was subject to "allegedly illegal downtime"); Docket No. 139 at 5 (referring to plaintiff's "unpaid straight time (downtime) claim"); Docket No. 146 at 4–5 (separating "Unpaid Straight Time Class" into "Minimum Wage Act Downtime Class" and "Wage Claim Act Downtime Class").

plaintiff filed this lawsuit until the present, and one under the Colorado Wage Claim Act for service technicians who worked at any of defendants' locations for three years before the filing of this lawsuit until the present.  Docket No. 146 at 4–5.  For her second and third claims, plaintiff seeks to certify one class of all current and former service technicians who worked at defendants' locations from three years before filing of this lawsuit until the Court enters final judgment.  Docket No. 133 at 9.  Finally, plaintiff asks the Court to appoint her class representative and her counsel, Towards Justice and Kilmer, Lane & Newman, as class counsel.  *Id.* at 14–15.

## II.  LEGAL STANDARD

A district court may certify a class action if the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a) as well as the requirements of one of the three types of classes in Rule 23(b).  "The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied."  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004)).  In deciding whether the proposed class meets these requirements, the district court "must accept the substantive allegations of the complaint as true," but it "need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints."  *Id.* (quotations omitted).  "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v. Duk*es, 564 U.S. 338, 350–51 (2011) (quotations omitted).

## III.  ANALYSIS

### A.  Ascertainability

The Court will first consider whether plaintiff has proposed an ascertainable class.  "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class."  *Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (quotations omitted); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that "[c]lass ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)" (quotations omitted)).  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014).

In her motion, plaintiff proposes the following two classes:

1.    **THE UNPAID STRAIGHT TIME CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from six years prior to the filing of this case through final judgment.

2.    **THE COMMISSION AND TIP THEFT CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from three years prior to the filing of this case through final judgment.

Docket No. 133 at 9.  Plaintiff asserts that there is no difference between the two classes other than the time period covered because the statute of limitations for plaintiff's downtime claim is six years, while the statute of limitations for the commission and tip theft claims is two years or, if the conduct is willful, three years.  *Id.* at n.4.

4

### 1.  Downtime Class

Defendants argue that the proposed downtime class "must be limited . . . to the potential recovery of minimum wage under the Colorado Minimum Wage Act," even though plaintiff has pled her downtime claim under both the Colorado Wage Claim Act ("WCA") and the Colorado Minimum Wage Act ("MWA").[2]  Docket No. 139 at 6. Defendants insist that "a single class cannot be certified as to a claim arising under two different statutes with different statutes of limitations and different remedies."  *Id.* at 7. Defendants characterize plaintiff as trying to "use the statute of limitations applicable to one statute to expand the group of service technicians who could recover different remedies under a different statute" and, therefore, defendants insist, if this class is certified, it may only be under the MWA limitations period.  *Id.*  Defendants do not further explain why plaintiff must be restricted to the shorter limitations period, given that plaintiff pled her downtime claim under both the MWA and the WCA.  Nor do defendants raise any ascertainability arguments.

Plaintiff insists that a single class can be certified for downtime claims under both the WCA and the MWA for unpaid minimum wage, even though the two statutes have different limitations periods, because unpaid minimum wage can be recovered under both the WCA and the MWA and because liability will be determined based on the same issue of law.  Docket No. 146 at 2–3.  In her reply, plaintiff proposes separating the downtime class into two separate classes as follows:

1.  **THE MINIMUM WAGE ACT DOWNTIME CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2,

---

[2] The MWA is implemented in the Colorado Minimum Wage Order, 7 Colo. Code Regs. §§ 1103-1:1, *et seq.*

LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from six years prior to the filing of this case until the present.

2.    **THE WAGE CLAIM ACT DOWNTIME CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from three years prior to the filing of this case until the present.

*Id.* at 4–5.  The Court finds that these proposed classes are sufficiently defined since it is "administratively feasible for the court to determine whether a particular individual is a member."  *See Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2016 WL 11697044, at *7 (D. Colo. Sept. 20, 2016) (quoting *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995)).  The two classes are ascertained by reference to objective criteria, namely, a date and employment at an Ella Bliss location as a service technician.  Neither of these metrics is subjective, and the Court can "determine who is in the putative class."  *See Lary v. Biodesix, Inc.*, No. 19-cv-03006-PAB-NRN, 2020 WL 5513408, at *2 (D. Colo. Sept. 14, 2020).  To the extent there is overlap between members of the classes and their damages claims, plaintiff is correct that individualized or different damages calculations do not defeat certification.  *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."); *see also Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019) ("[M]aterial differences in damages determinations will only destroy predominance if those 'individualized issues will overwhelm . . . questions common to the class." (internal quotation omitted)).

6

### 2. Commission and Tip Theft Class

The commission and tip theft class is also ascertainable.  As with the downtime class, it is "administratively feasible for the court to determine whether a particular individual is a member" of the class.  *See Wornicki*, 2016 WL 11697044, at *7 (quoting *Davoll*, 160 F.R.D. at 144).  The commission and tip theft class is ascertained by reference to objective criteria, namely, a date and employment at an Ella Bliss location as a service technician.  Neither of these metrics is subjective, and the Court can "determine who is in the putative class."  *See Lary*, 2020 WL 5513408, at *2.

### B.  Rule 23(a) Requirements

A plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *Wornicki*, 2016 WL 11697044, at *3.

### 1. Downtime Classes

Defendants do not challenge numerosity, commonality, typicality, or adequacy under Rule 23(a).  Docket No. 139 at 7 ("If properly tailored . . . , [d]efendants do not challenge numerosity, commonality, typicality or [p]laintiff's adequacy under Rule 23(a) . . . as to the legal question related to downtime.").  The Court agrees that plaintiff has adequately shown the Rule 23(a) requirements for the downtime classes.

### 2. Commission and Tip Theft Class

For the commission claim, defendants' main concern is with commonality.  For the tip theft claim, defendants argue that certification is inappropriate because plaintiff has presented no evidence that tips were actually withheld.  The Court first considers defendants' arguments regarding the commission claim and then the arguments regarding the tip theft claim.

Defendants argue that individual issues and questions prevent certification of a class regarding the commission claim.  Docket No. 139 at 8–11.  More specifically, defendants contend that "[p]laintiff failed to identify a legal or factual question applicable to the proposed commission class and thus certification of the class is improper."  *Id.* at 11.  This is an argument about "commonality" under Rule 23(a)(2).  Rule 23(a)(2) requires "only a single question of law or fact common to the entire class"; however, "[m]ere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist."  *Devaughn*, 594 F.3d at 1195 (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)).

Plaintiff argues that there are common issues of fact and law for both the commission and the tip theft claims.  Docket No. 133 at 6–9.  As to the underpaid commission claim, plaintiff alleges that defendants have a policy of promising technicians 5% commissions on services, *id.* at 6, which plaintiff argues means 5% on the service price for each service that the technician performed.  Docket No. 114 at 12, ¶ 43.  However, plaintiff alleges that, in practice, defendants increase technicians' hourly pay amount by 5% for the time that the technician spends performing a service,

or 105% of the technician's hourly wage for that time, which results in less pay.  *Id.* at 6 (citing Docket No. 114 at 11–12, ¶¶ 72–77).

Plaintiff acknowledges that defendants used standard form contracts with technicians and that the 5% commission language somewhat differs in each form.  *Id.* There were four variations: 256 technicians signed contracts that promised "5% commission on service hours, plus tips"; 49 technicians' contracts promised "5% commission on services, plus tips"; 70 technicians' contracts promised "5% commission, plus tips"; and 3 technicians' contracts promised "5% commission on the service rate, plus tips."  *Id.*  Regardless of these variations, plaintiff contends, "the plain meaning of contracts including a 5% commission entitles service technicians to 5% of revenue generated from services, regardless of the exact language used in the provision."  *Id.*

Defendants concede that "[a]ll service technicians in the proposed class, including [p]laintiff, were paid 5 percent commissions calculated on their hourly service rates."  Docket No. 139 at 8.  However, defendants insist that individualized issues prevent certification because the proposed class members' contracts contain different commission language.  *Id.*  Defendants also argue that the contracts are ambiguous and that, because the meaning of an ambiguous contract provision is determined through extrinsic evidence of the intent of the parties, which will vary by technician, the ambiguity prevents a finding of commonality.  *Id.* at 9–11.

Defendants' commonality argument is unpersuasive.  Defendants concede that, regardless of the precise language in each technicians' contract, "commissions were always paid to service technicians as 5 percent on their respective service rates, and all of the offer letters ultimately reflect this intent as to calculation: 5% commission paid on

service rate." *Id.* at 8–9.  Given that all technicians ultimately faced the same practice, the fact that their contracts may have had slightly different wording does not prevent a finding of commonality.  As a result of this uniform practice, notwithstanding defendants' use of slightly different contracts, there is at least one common question of law for the unpaid commission claim – namely, whether paying service technicians 105% of their hourly service rate, rather than 5% of the amount that a customer paid for the service, violates the Colorado Wage Claim Act.  *See* Docket No. 133 at 7 (quoting Docket No. 133-13).

The Court has previously found commonality where a case involved a breach of a standard contract or "virtually identical" contract.  *See Wornicki*, 2016 WL 11697044, at * 5 ("Multiple courts have found commonality satisfied where a case involves breach of a standard contract." (citing *Demitropoulos v. Bank One Milwaukee, Nat'l Assoc.*, 915 F. Supp. 1399, 1417 n.19 (N.D. Ill. 1996) ("The fact that this case involves a standard form lease also leads this Court to conclude that Rule 23(a)(2)'s commonality requirement is met"); *In re Chase Bank USA, Nat'l Assoc. Check Loan Contract Litig.*, 274 F.R.D. 286, 291 (N.D. Cal. 2011) (finding commonality satisfied where, although class members received "various form letters" by which the relevant offers were made, "each offer sets forth the same basic terms"); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (commonality satisfied where "all putative class members have signed substantively identical or similar form agreements with [defendant]")).

Defendants' argument that the commission language is ambiguous is also not persuasive because there is no dispute that all service technicians were treated the same, regardless of which variation of the form contract they signed.  Thus, the Court

considers a potential class of all service technicians within the relevant time period, not a separate subclass of the three technicians whose contracts promised "5% commission on the service rate, plus tips."  Docket No. 133 at 6.  This is either 294 people, *see id.* at 10 (noting that defendants confirmed in discovery that they employed 294 service technicians between May 2015 and April 2021), or 378 people.  *See id.* at 6 (noting that 378 service technicians signed contracts with some variation of the commission language).  Either is sufficient.  *See Wornicki*, 2016 WL 11697044, at *4 (citing *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243 at *2 (D. Colo. May 28, 2013) (numerosity met where "there are approximately 125 class members" and "the cost of litigation ... is high compared to recovery").

Defendants argue that certification of a tip class is improper because there is no evidence that the challenged tip policy existed, Docket No. 139 at 11–13, and that plaintiff "failed to present evidence that any service technician was ever actually denied his or her tips for any reason."  *Id.*  This argument is raised as a commonality concern. *Id.* at 11 ("Plaintiff failed to establish commonality for the proposed tip theft class because she offered no evidence that the challenged tip policy even existed."); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (noting that the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly protected in their absence").

Plaintiff argues that defendants mischaracterize plaintiff's claim, which is that

defendants committed civil theft through the practice of retaining customers' tips in a lockbox, which only a manager had a key to, until after the service technicians completed their end-of-shift "downtime" cleaning services, after which managers would "release" tips.  Docket No. 133 at 8.  Plaintiff contends that defendants' retention of tips until the end of a shift – and the end of cleaning services – constitutes civil theft even though defendants did not permanently withhold tips.  *See* Docket No. 114 at 32, ¶¶ 188–89 ("By withholding tips until and unless [p]laintiff and those similarly situated performed uncompensated labor, [d]efendants knowingly retained and/or exercised control over a thing of value without authorization and/or by threat. . . .  Defendants demanded that [p]laintiff and those similarly situated perform uncompensated labor, to which [d]efendants were not legally entitled, as a condition of restoring their tips to [p]laintiff and those similarly situated.").

Defendants are correct that "Rule 23 is more than a pleading standard," *XTO Energy*, 725 F.3d at 1217–18, because "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable," *id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); however, a court's "primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims" and not to "pass[] judgment on whether plaintiffs will prevail on the merits."  *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-SKC, 2021 WL 1172650, at *1 (D. Colo. Mar. 29, 2021) (quoting *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087–88 (10th Cir. 2014)).

Defendants first argue that plaintiff has provided no evidence that the challenged tip policy existed.  Defendants point to defendant Brooke Vanhavermaat's testimony

that she was unaware of any manager refusing to give a cash tip to a technician.
Docket No. 139 at 12 (citing Docket No. 133-2 at 31–32).  Vanhavermaat also testified
that tips are usually released at the end of a shift after the technician "checks out,"
which involves a manager signing off on the completion of "team duties," but she stated
that a technician could get his or her tips early, for instance, if the technician had to
leave the salon early.  Docket No. 133-2 at 31–32.

Vanhavermaat's statement that a technician could get his or her tips early
appears to describe an exception to defendants' policy that defendants retained
technicians' cash tips until the end of the technician's shift.  Two employees provide
declarations that technicians were not allowed to get their tips unless a manager verified
that the technician completed the closing duties.  *See* Docket No. 133-8 at 1, ¶ 4; 133-9
at 3, ¶ 9.  Defendant Peter Koclanes testified that, when a customer gives a tip to a
"concierge" or manager at the register, as opposed to directly to the technician, Ella
Bliss's policy is that the tip is "immediately put in a sealed envelope with the service
technician's name on it and put into a locked box."  Docket No. 133-1 at 21.  Koclanes
testified that the policy is that the manager has the key to the locked box.  *Id.* at 22.
Koclanes also stated, "[a]t the end of the technician's shift, when they [sic] check out
with the manager on the floor, they [sic] ask for their [sic] cash tips."  *Id.*  The "check-
out" process includes a "10-minute cleanup time."  *Id.* at 23.  Koclanes explained that
the cleanup time is "universal."  *Id.*  When asked if a technician could check out before
finishing the cleanup chores, for instance, because the technician does not like doing
chores, Koclanes testified, "[i]f you're still working, you're on the clock."  *Id.*  When
asked again whether it is "Ella Bliss's policy that a service technician may check out

without performing his or her chores," Koclanes responded "[n]o." *Id.* Thus, the Court does not find persuasive defendants' argument that plaintiff has "offered no evidence that the challenged tip policy even existed." *See* Docket No. 139 at 11.

The Tenth Circuit has explained that the "party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *XTO Energy*, 725 F.3d at 1217. Plaintiff has met this burden with the evidence that she has provided and her identification of a "discrete legal or factual question common to the class," *see Devaughn*, 594 F.3d at 1195 (citing *Valdez*, 186 F.3d at 1288), namely, whether defendants' practice of holding tips in a locked safe until the end of a shift – and until after technicians performed downtime cleaning services at the end of their shifts – amounted to civil theft of the tips under Colo. Rev. Stat. §§ 8-4-103(6), 18-4-401.

Finally, defendants argue that plaintiff cannot adequately represent the class because "she herself never had her tips withheld." Docket No. 139 at 12–13. The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs . . . have any conflicts of interest with other class members and (2) will the named plaintiffs . . . prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Defendants have addressed none of these

issues regarding plaintiff's adequacy to represent the tip theft class.  To the extent defendants argue that plaintiff was never affected by the alleged policy, plaintiff's testimony indicates otherwise.  Plaintiff testified that, if a technician did not complete his or her chores, the technician would not receive his or her tips.  Docket No. 133-17 at 46. Plaintiff also testified that she had to prove to managers that she had done her chores before she could get her tips.  *Id.*  More specifically, plaintiff explained that, at the end of a technician's shift, the technician would take a checklist to the manager showing that the technician performed the chores.  *Id.* at 25.  The manager would confirm the work was completed and would then release the technician's tips.  *Id.*  That is largely consistent with Koclanes's testimony as well.  Although plaintiff testified that a manager never withheld her tips at the end of a shift, plaintiff did not testify that she was able to get her tips without completing the check-out procedures.  When asked whether she took "the actual lists to the managers every time [she] checked out from a shift at Ella Bliss," plaintiff responded, "[y]es, you had to take the list to them, yeah."  *Id.*  She also testified that the managers "would then initial [the checklists] and then they would release your tips and you were allowed to go home for the day."  *Id.*

The adequacy-of-representation inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods.*, 521 U.S. at 625.  To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id.* at 625–26.  The Court finds that plaintiff has sufficiently shown, at this stage of the litigation, that she was affected by defendants' tip policies, is a member of the class that she seeks to represent, and has the same interests an injuries as other

potential class members.  Defendants raise no other numerosity, typicality, or adequacy arguments under Rule 23(a).  *See generally* Docket No. 139.  The Court agrees that plaintiff has adequately shown the Rule 23(a) requirements.

### B.  Rule 23(b)(3) Requirements

After meeting Rule 23(a)'s requirements, the plaintiff must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).  Here, plaintiff asks the Court to certify a class under Rule 23(b)(3).  Docket No. 133 at 12. Under that provision, plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 615 (To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy.").  In determining predominance and superiority, the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v.*

*DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem Prods.*, 521 U.S. at 624. Rule 23(b)(3)'s purpose is to "ensure[] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  To demonstrate predominance, plaintiff must demonstrate that its claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3d Cir. 2008).  A question is individual when "the members of a proposed class will need to present evidence that varies from member to member." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  Predominance, on the other hand, requires the Court to consider "(1) which . . . elements [of plaintiffs' claims] are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not." *CGC Holding*, 773 F.3d at 1087–88.

### 1.  Downtime Classes

Defendants do not explicitly challenge predominance or superiority under Rule 23(b)(3) for the downtime classes.  *See* Docket No. 139 at 7 ("If properly tailored . . . , [d]efendants do not challenge . . . predominance or superiority under Rule 23(b)(3) as to the legal question related to downtime.").  The Court finds the facts and issues in plaintiff's unpaid downtime claim are more susceptible to generalized proof than individualized proof.  *See CGC Holding*, 773 F.3d at 1087–88.

As discussed previously, the main issue in this claim is whether defendants have complied with Colorado minimum wage law in their payment of technicians for downtime.  Plaintiff argues that defendants were required to pay at least minimum wage for each hour of downtime technicians worked, while defendants maintain that they only had to ensure that a technician's total weekly pay divided by total weekly hours exceeded Colorado minimum wage.  Given that all technicians were paid pursuant to the same policy and that the parties have the same arguments with respect to all technicians, the Court finds that the downtime claim is "capable of proof at trial through evidence that is common to the class rather than individual to its members," *see Hydrogen Peroxide*, 552 F.3d at 311–12, because a legal determination about whether defendants' downtime pay policy complied with Colorado minimum wage law will resolve the claim.  The Court also notes that there is no indication that any potential members of the classes have an interest in individually controlling the prosecution or defense of separate actions; litigation is already advanced against defendants in this four-year-old case; there is a desirability and efficiency in concentrating the claims by plaintiff against defendants in this Court; and management of a class action is not likely to be difficult.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

### 2. Commission and Tip Theft Class

As to the commission and tip theft class, defendants do not raise a Rule 23(b)(3) predominance argument separately from their Rule 23(a) commonality argument. Docket No. 139 at 7–13.

The Court finds the facts and issues in plaintiff's unpaid commission and tip theft claims are more susceptible to generalized proof than individualized proof.  *See CGC*

*Holding*, 773 F.3d at 1087–88.  As with the downtime claim, the Court's determination of whether defendants' practice of paying commissions by adding 5% to technicians' service rates complied with the contracts and Colorado law will resolve the commission claim without reference to individualized proof.  Similarly, the legal determination of whether defendants' practice of withholding tips until the end of a technicians' shift constituted civil theft will also resolve the tip theft claim without the need for individualized proof.  As plaintiff notes, the fact that technicians may have different levels of damages does not defeat certification.  *XTO Energy*, 725 F.3d at 1220 ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification.")).

The Court makes additional findings in support of predominance.  First, defendants have identified no evidence that any potential members of the class have an interest in individually controlling the prosecution or defense of separate actions.  Second, litigation is already advanced against defendants, which supports class resolution in this action, rather than new, individual lawsuits.  Third, there is a desirability and efficiency in concentrating the claims by plaintiff against defendants in this Court.  Fourth, defendants have not shown that management of a class action is likely to be difficult.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).  The Court finds that plaintiff has established predominance as to the unpaid commission and civil theft claims as well.

### C.  Adequacy of Plaintiff's Proposed Class Counsel

Defendants challenge the adequacy of plaintiff's proposed class counsel under Rule 23(g).  *See* Docket No. 139 at 13–16.  This requirement protects the due process

interests of unnamed class members who are bound by any judgment unless they opt out.  *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 n.5 (1996).  The Court's inquiry is similar to determine the adequacy of plaintiff's counsel.  The Tenth Circuit directs the Court to ask two questions in determining adequacy of representation: (1) Does the proposed class counsel have any conflicts of interest with other class members?  (2) Will the proposed class counsel prosecute the action vigorously on behalf of the class?  *See Rutter & Wilbanks*, 314 F.3d at 1187–88.

Defendants argue that, because plaintiff's counsel are defendants in state-court litigation brought by defendants' counsel, plaintiff's counsel cannot adequately represent the proposed class.[3]  Docket No. 139 at 13–15.  In response to the state-court lawsuit, as well as counterclaims that defendants have filed in this case, plaintiff added claims for retaliation and abuse of process.  Defendants assert that plaintiff's counsel are unable to serve as class counsel because of plaintiff's counsel's "obvious financial interest in being appointed class counsel" and their "repeated representations to this Court that the state court litigation has had and will have, for as long as it is active, significant impact on this federal case," in part because the Court's resolution of the non-class claims of abuse of process and retaliation will delay resolution of the class claims.  *See id.*  Although the relation between plaintiff's counsel and defendants' may be more antagonistic than in other cases, the Court does not find plaintiff's counsel to be inadequate.  First, without passing judgment on the merits of either party's post-filing

_____

[3] Defendants sued plaintiff's counsel in state court for defamation and intentional interference with contractual relations based on statements that plaintiff's counsel made at a press conference in front of one of defendants' locations on the day plaintiff filed this lawsuit.  This case is pending before the Colorado Supreme Court on a petition for a writ of certiorari.  *See Killmer, Lane & Newman, LLP v. BKP, Inc.*, 2021SC930 (Colo. Sup. Ct.).

conduct, the Court is not persuaded that defendants may disqualify plaintiff's counsel for responding to defendants' state-court lawsuit and counterclaims.  Defendants should not be able to use the state-court proceeding as both a sword to address alleged defamation and a shield to prevent plaintiff's counsel from service in this case as class counsel.  Second, defendants' financial interest argument is unpersuasive because any proposed class counsel would have a financial interest in such an appointment.  That alone cannot disqualify counsel.  Third, defendants have not shown why plaintiff's non-class claims would delay resolution of the class claims any more than the defendants' state-court lawsuit would.  As defendants note, plaintiff does not seek class certification of the non-class claims.  This dispute is more than four years old, and both parties have expended significant resources, which weighs in favor of plaintiff's counsel serving as class counsel.  Fourth, the Court perceives no conflict of interest between plaintiff's proposed class counsel and other members of the class.  Defendants imply that plaintiff's counsel may attempt to facilitate a global settlement of both this action and the state-court action.  So long as the proposed settlement is fair and equitable to class members and defendants, the Court does not see why the potential for such a fair and equitable resolution is a conflict between plaintiff's counsel and proposed class members.  Fifth, there is no dispute that plaintiff's counsel is able to vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks*, 314 F.3d at 1187–88.

Rule 23(g) also requires the Court, in appointing class counsel, to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the

types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Towards Justice and Killmer, Lane & Newman ("KLN") have been involved in this case from the beginning.  *See* Docket Nos. 1–3.  Towards Justice has substantial experience in litigating wage and hour class actions, and KLN has substantial experience in trial work and litigating multi-plaintiff actions.  Both have knowledge of the facts in this case and the relevant law.  Finally, defendants identify no resource shortage that would compromise plaintiff's proposed class counsel's vigorous advocacy.  *See Rutter & Wilbanks*, 314 F.3d at 1187–88.  The Court therefore finds that plaintiff has satisfied Rule 23(g)'s requirements and that Towards Justice and Killmer, Lane & Newman LLP shall be appointed class counsel.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion for Class Certification Under Rule 23(b)(3) and Appointment of Class Counsel Under Rule 23(g) [Docket No. 133] is **GRANTED**.  It is further

**ORDERED** that the following classes are certified

1.  **THE MINIMUM WAGE ACT DOWNTIME CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from six years prior to the filing of this case until the present.

2.  **THE WAGE CLAIM ACT DOWNTIME CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from three years prior to the filing of this case

until the present.

3.    **THE COMMISSION AND TIP THEFT CLASS:** All current and former service technicians who worked for the entity defendants (BKP Inc., Ella Bliss Beauty Bar LLC, Ella Bliss Beauty Bar – 2, LLC, and Ella Bliss Beauty Bar – 3, LLC) at any of Ella Bliss Beauty Bar's three locations from three years prior to the filing of this case until the present.[4]

It is further

**ORDERED** that the classes as certified meet the requirements of Fed. R. Civ. P. 23(b)(3).  It is further

**ORDERED** that Towards Justice and Killmer, Lane & Newman LLP are appointed class counsel.  It is further

**ORDERED** that plaintiffs Lisa Miles a/k/a Elisa Marie Miles is appointed class representative.  It is further

**ORDERED** that, within 21 days of the entry of this order, the parties shall confer and submit to the Court a notice to be served upon class members pursuant to Fed. R. Civ. P. 23(c)(2)(B).  If the parties are unable to agree on the text of this notice, they shall submit plaintiff's proposed text along with a detailed list of defendants' objections.

DATED September 15, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] As noted previously, plaintiff's motion defines this class as those service technicians who worked defendants "through final judgment."  *See* Docket No. 133 at 9. Plaintiff's modified Minimum Wage Act and Wage Claim Act classes use the phrase "until the present" rather than "through final judgment."  *See* Docket No. 146 at 4–6. The Court will certify the three classes with the "until the present" language for the three classes.